FRED F. MURRAY, ADMINISTRATOR OF THE ESTATE OF JAMES C. MURRAY, DECEASED, v. E. W. WYATT, SR., AND E. W. WYATT, JR., AND JOE BOYLE.

(Filed 12 December, 1956.)

**1. Appeal and Error § 51—**

Where motion to nonsuit is made at the close of plaintiff's evidence and renewed after the close of all the evidence, only the second motion is to be considered on appeal.  G.S. 1-183.

**2. Trial § 22a—**

Upon motion to nonsuit, the evidence, whether offered by plaintiff or by defendants, must be considered in the light most favorable to plaintiff.

**3. Automobiles §§ 41k, 42k—**

The evidence tended to show that intestate was directing the unloading or dumping of trucks at a "refuse pile," and was signalling the drivers before they made their respective movements, that he was standing at the rear of one truck when the operator of another truck backed into him and crushed him between the vehicles.  There was conflict in the testimony as to whether the driver of the backing truck backed into intestate without having received signal.  *Held:* The evidence was sufficient to be submitted to the jury on the issue of negligence and did not establish contributory negligence as a matter of law.

**4. Automobiles § 12—**

Before backing a vehicle the driver is under duty in the exercise of due care to see that he can make the movement in safety.

**5. Automobiles § 25—**

Any speed may be unlawful and excessive if the operator of a motor vehicle knows or by the exercise of due care should reasonably anticipate that a person or vehicle is standing in his line of travel.

**6. Automobiles § 36—**

Where defendants allege that the operator of the vehicle causing the injury was backing at the direction of the injured person, by way of new matter constituting a defense, and by way of contributory negligence. the burden of proving such affirmative defenses is on defendants, the allegations being expressly denied in the reply.

**7. Automobiles § 46: Negligence § 20—**

The refusal of the court to give peremptory instructions on the issue of contributory negligence is proper when the determinative facts are in dispute.

**8. Automobiles § 37: Trial § 23c—**

The admission of testimony of witnesses that they did not see intestate, who was supervising the movement of the trucks, give defendant driver a signal to back and did not hear defendant driver give warning by sounding his horn will not be held prejudicial on the ground that the witnesses, from where they were, could not have seen what they testified they did see, when the evidence fails to prove such impossibility, and there is testimony, not objected to, of the same import, the probative value of the testimony objected to being for the jury.

**9. Automobiles § 46: Trial § 31e—**

Negative evidence may be for the court on the question of whether it has any probative value in determining the sufficiency of all the evidence to make out a case, but when the evidence, apart from such negative evidence, is sufficient to take the case to the jury, the trial court may not comment on the weight of the evidence, negative or otherwise.

**10. Customs and Usages § 3—**

Where the evidence discloses that truck drivers in the performance of their duties in dumping their trucks on a particular project had a safety rule to await a signal from the foreman before maneuvering their trucks to the "refuse pile," and that such practice was known to defendant driver, an instruction to the jury that if they found from the evidence that defendant driver moved his truck at the time in question without awaiting signal from the foreman, such failure would be negligence, is warranted.

JOHNSON, J., not sitting.

APPEAL by defendants from *Mallard, J.,* March Term, 1956, of WAKE.

Action to recover damages for the alleged wrongful death of James C. Murray on 16 July, 1953.

Plaintiff alleged that Murray's death was caused by the negligence of Boyle, defendants' employee. Defendants denied that Boyle was negligent and pleaded the contributory negligence of Murray in bar of plaintiff's right to recover.

Answering the issues of negligence and contributory negligence in plaintiff's favor, the jury awarded damages in the amount of $15,000.00.

The facts stated in the numbered paragraphs below are established by admission or stipulation.

1. Murray, truck and plant foreman for F. D. Cline Paving Company at its road mix plant near the Town of Youngsville, was engaged in the performance of his duties, which included the supervision and direction (1) of the movement of trucks engaged in the hauling of mixtures to and from said plant and the company's road construction project on U. S.

Highway #1, and (2) of the loading and unloading of said trucks at the plant site.

2. Defendants were engaged in the business of trucking and contract hauling, owning and operating a fleet of trucks.

3. Boyle was operating defendants' 1952 Chevrolet dump truck, engaged in hauling materials to and from said plant and said road construction project; and at or about 12 o'clock noon was operating said truck as agent, servant and employee of defendants.

4. The truck operated by Boyle, along with other trucks owned by defendants and operated by their employees, were returning from said highway construction project to said plant, hauling certain plant mixtures that had been rejected for use upon the highway.

5. Murray died "as the direct and proximate result of injuries received when Truck #2 (operated by Boyle) backed into Truck #1 (operated by Jones), pinning him between the trucks . . ."

Six witnesses gave testimony relevant to the circumstances of Murray's death. Perkins, Perry and Lambeth, offered by plaintiff, were employees of Cline on 16 July, 1953; and Boyle, Hutchins and Jones, offered by defendants, were employees (operating dump trucks) of defendants on that date.

The plant site was a big clearing. Bulldozers had pushed trees off in all directions. Perkins operated a tractor with a pan attached. His job was to strip the top soil and put it on a big pile near the mix plant, for use with stone in the mix plant. The mix plant was set up in the middle of the clearing.

The "refuse pile" was southwest of the "topsoil pile" and of the mix plant. It was composed of mixtures hauled to the road construction job and rejected. There had been no "refuse pile" prior to 16 July, 1953. The first "refuse" was dumped about 9 to 9:30 that morning. During the morning several of defendants' trucks had dumped rejected materials there, under the direction of Murray. When Murray was killed, the "refuse pile" was three feet high, fourteen yards each way.

About 12 o'clock noon, certain of defendants' trucks, loaded with rejected materials, returned to the plant site to dump their loads on the "refuse pile." According to Jones, four trucks, identified by the names of the respective drivers, came onto the plant site in this order: the Hawks truck, the Boyle truck, sometimes referred to as Truck #2, the Jones truck, sometimes referred to as Truck #1, and the Hutchins truck. It appears that all of the trucks, in the area east of the "topsoil pile" and mix plant, proceeded south until they got beyond the "topsoil pile" and mix plant; but thereafter different courses were taken by the Boyle, Jones and Hutchins trucks. Hawks, according to Jones, "was on ahead of all of us." It may be inferred from his testimony that Hawks had

dumped his load before the other three reached the immediate vicinity of the "refuse pile."

Upon reaching this area, Jones turned to his right, west, and stopped first on the east side of the "refuse pile." Then, according to Jones, Murray, who was then about 20-30 feet from his truck, told him "to pull on up and unload." Thereupon Jones drove up, then backed his truck against the "refuse pile." When he stopped, the Jones truck faced north. According to Jones, Murray "was standing there beside my truck . . . telling me what to do with my ticket . . . walked to the back of my truck hollering to . . . Hawks what was leaving, telling him what to do with his ticket." When Jones looked back, so he testified, "the truck backing down east struck him and pinned him between" the Jones truck and the Boyle truck. The Jones truck had not dumped its load.

While these events were in progress, Boyle had taken this course: He did not turn right, west, until he got beyond the "refuse pile." He then turned, went around the south end of the "refuse pile" and thence north along the west side thereof. When he stopped the Boyle truck faced west; and some 30 feet east of the rear of his truck, downgrade, was the northwest portion of the "refuse pile."

Hutchins, so he testified, followed Boyle around the south end of the "refuse pile" and to the west side thereof, but stopped some 50 yards behind him. As Hutchins put it: "I had stopped because I was waiting for Joe (Boyle) to get his signal then I was going to pull up. I was waiting for the signal to pull in there. I would not have pulled in had no signal been given to me. I would have stayed right there where I was and where I did stay."

As indicated, much of the foregoing is from the testimony of defendants' witnesses. Plaintiff's principal witnesses gave testimony, in substance, as set out below.

Perkins testified, in substance, as follows:

He had just dumped a load on the "topsoil pile." On his way down the "topsoil pile" he observed the trucks some 100 yards to the south. "Not knowing exactly what it was all about, I stopped the tractor just to look and see what was going on." His seat on the tractor was some five feet above the ground. ". . . I could see very clearly everything that was in my view out front." His tractor then faced west.

He saw Murray walk to the front of the truck that faced north and stand there. Then Murray walked towards the tail end of that truck. He (Perkins) could see underneath the bed of the truck, "little above knee high." Murray, standing with his face towards Perkins, held up his hand and gave directions to *this driver* to dump his load. "At the same time I saw a truck with the back coming towards Mr. Murray's back." The truck facing north was standing still. Murray was pinned

between the tail gates of the backing truck and the standing truck. He was "hung" between the two trucks.

He ran down the hill. The boys were hollering: "Pull up, pull up, pull up. You have a man pinned in here." The motor of the Boyle truck was not running. "I heard the truck crank up and instead of pulling forward it lurched backwards and Mr. Murray's feet flew off the ground, and this truck finally pulled up and Mr. Murray fell to the ground. Mr. Murray got up and fell all in the rock pile."

Further testimony by Perkins, admitted over defendants' objections, tended to show: that the plant foreman gave directions with reference to loading and unloading the trucks; that the practice at this plant site with reference to the backing of trucks into position for loading and unloading was to back when motioned to do so and to stop to dump his load when the person giving directions "put his hand up in the air"; and that this practice was followed at this plant site from 13 May, when he started to work there, until Murray's death.

Perry testified, in substance, as follows:

His job was to operate the "dozer" at the mixing plant. He was working on the "dozer," some 75-100 yards from the "refuse pile," when the Jones truck came in. Murray was riding on the running board. When the Jones truck came to a stop, Murray got off, paused at the door of the truck where the driver was, then left and walked down to the rear of the Jones truck, then turned left and faced back towards the front end of the Jones truck.

When the Boyle truck began backing, Murray was right at the corner. "I would say that Truck #2 backed about 30 feet before it came into contact with the rear of Truck #1." When Truck #2 drove off, he saw Murray fall to the ground. He then went to Murray.

Other evidential facts will be stated in the opinion.

Defendants alleged in substance that Boyle backed his truck in accordance with signals and instructions given him by Murray; that Murray left the place of safety from which he had given said signals and instructions to Boyle and moved quickly to a position directly in the path of the backing Boyle truck, but Boyle had no knowledge or notice that Murray had done so; and that Murray's negligence in so doing was the cause of his fatal injuries. Some of defendants' evidence, taken in the light most favorable to them, tends to support these allegations.

Judgment for plaintiff in accordance with the verdict, was signed and entered. Defendants excepted and appealed. They present assignments of error 1-62, both inclusive, based on exceptions of corresponding numbers, for our consideration.

*Thomas A. Banks and William T. Hatch for plaintiff, appellee.*
*Smith, Leach, Anderson & Dorsett for defendants, appellants.*

BOBBITT, J.  Defendants offered evidence.  Hence, the only motion for judgment of nonsuit to be considered is that made at the close of all the evidence.  G.S. 1-183; *Atkins v. Transportation Co.*, 224 N.C. 688, 32 S.E. 2d 209.

In determining its sufficiency for submission to the jury, the evidence, whether offered by plaintiff or by defendants, must be considered in the light most favorable to plaintiff.  *Singletary v. Nixon*, 239 N.C. 634, 80 S.E. 2d 676; *Williamson v. Clay*, 243 N.C. 337, 90 S.E. 2d 727. Under the rule stated, there was no error in submitting the case to the jury.

There was plenary evidence that Murray (with his back towards Boyle), and the Jones truck, were standing at the north end of the "refuse pile" directly in the path of the Boyle truck while it backed downgrade and pinned Murray between the two trucks.  Moreover, the evidence, including Boyle's testimony, tended to show that, while backing, he could not see what was behind him; and that Boyle gave no signal by horn or otherwise before he started to back or while backing.

In view of the evidence that both Murray and the Boyle truck were in fact directly behind him, it was for the jury, upon all the evidence, to say whether Boyle failed to use due care in backing his truck without first exercising due care to ascertain whether he could do so without striking Murray or the Jones truck.  *Adams v. Service Co.*, 237 N.C. 136, 74 S.E. 2d 332.  There is little difference between backing a truck when you cannot see what is behind you and in driving forward when blindfolded.

Conceding, as contended by defendants, that the Boyle truck moved at "a normal speed for backing up," there was evidence of a special hazard.  See: G.S. 20-141(a)(c); *Baker v. Perrott*, 228 N.C. 558, 46 S.E. 2d 461.  Any speed may be unlawful and excessive if the operator of a motor vehicle knows or by the exercise of due care should reasonably anticipate that a person or vehicle is standing in his line of travel.

As indicated above, defendants, by way of new matter constituting a defense (G.S. 1-135(2)) and by way of contributory negligence (G.S. 1-139), alleged that Boyle backed his truck as directed by Murray. The burden of proving such affirmative defense was on defendants. *MacClure v. Casualty Co.*, 229 N.C. 305, 49 S.E. 2d 742.  The same rule applied to defendants' plea of contributory negligence. *Hunt v. Wooten*, 238 N.C. 42, 76 S.E. 2d 326, and cases cited.  It is noted that these allegations were expressly denied in plaintiff's reply thereto.

Defendants' said allegations, and *defendants' evidence* in support thereof, constituted the backbone of their defense.  The jury was at

liberty to reject them and did so. Certainly, the *undisputed* evidence here, taken in the light most favorable to plaintiff, did not establish plaintiff's contributory negligence so clearly that no other reasonable inference or conclusion could be drawn therefrom. *Dennis v. Albemarle,* 243 N.C. 221, 90 S.E. 2d 532.

Nor did the court err in refusing to give defendants' requested peremptory instruction, to the effect that they would answer the contributory negligence issue, "Yes," if they found the facts to be as all the evidence tended to show. The court did instruct the jury that if they found from the evidence and by its greater weight, first, that Murray was negligent "in that he failed to see what he should have seen, that he failed to keep a proper lookout and failed to exercise proper care for his own safety or that he signaled the driver to back in there and then stepped into the way of it or that he failed to keep looking and seeing what he would have seen," and second, that such negligence on the part of Murray was a proximate cause of Murray's death, they would answer the contributory negligence issue, "Yes." The instructions given were in substantial compliance with the requirements of G.S. 1-180.

Concerning the testimony of Perkins and of Perry, defendants insist that, from where they were, they could not have seen what they testified they did see. It is elementary that the probative value of their testimony was for the jury.

Even so, defendants contend it was error to permit Perkins and Perry to testify that they did not see Murray give any signal to Boyle and did not see Boyle give any signal, by hand, horn or otherwise, before or while he backed his truck. As to the latter, Boyle made no contention that he gave any signal. As to not seeing a signal by Murray, the gist of the testimony of Perkins and of Perry was that Murray was dealing with Jones, at his truck, facing away from Boyle, when Boyle started and continued to back his truck. And Jones testified, without objection, as follows: "I did not at any time see him turn his face in the direction of the truck of Joe Boyle, or give any signal in that direction whatsoever. I did not hear the sound of any horn or signal from the truck of Joe Boyle as it backed towards the rear and into the rear of my truck."

Defendants insist further that the court, even in the absence of special request, should have instructed the jury specifically "concerning the probative value, weight or effect of 'negative' testimony." Neither defendants' assignment of error nor their brief advises us as to the instructions they considered appropriate. In some cases, where defendant's motion for judgment of nonsuit turns on the sufficiency of certain negative evidence to take the case to the jury, the court must say *as a matter of law* whether such negative evidence has *any* probative value. *Johnson & Sons, Inc., v. R. R.,* 214 N.C. 484, 199 S.E. 704. But when

the evidence, apart from such negative evidence, is sufficient to take the case to the jury, the rule is that the trial court may not comment on the weight of evidence, negative or otherwise. *Carruthers v. R. R.*, 218 N.C. 49, 9 S.E. 2d 498. The decision in the *Carruthers case* was reversed on rehearing, 218 N.C. 377, 11 S.E. 2d 157; but this was on the ground of invited error, that is, the erroneous instructions were prepared by appellant and given by the court at his specific request. On rehearing, the Court adhered to the law as stated in the original opinion.

The defendants insist that the court erred in instructing the jury as follows:

"Gentlemen, I instruct you that if you find that there was an established practice pertaining to the manner of moving motor vehicles at that mixing plant site and that such practice was reasonable and that such practice was for the reasonable safety of those engaged in working thereon and that such practice required the operators of motor vehicles thereon to await a signal from the foreman before moving thereon, and that such practice was known to the said Joe Boyle, or in the exercise of reasonable care, should have been known by him, then the Court instructs you it would have been the duty of Joe Boyle to abide by signals from the foreman and failure so to do would be negligence."

As indicated above, Perkins testified to the existence of such a practice. But, apart from his testimony, there is ample evidence thereof. Indeed, Boyle testified that he pulled up and waited for instructions from Murray. On cross-examination, he testified that Murray "would show us where to unload and directed me." As indicated above, Hutchins testified that he stopped, waiting for Boyle to get a signal from Murray; and that he too was waiting for a signal before starting his truck. As indicated above, Jones backed his truck to the north edge of the "refuse pile" for dumping as directed by Murray. There was evidence that defendants' trucks had been loading and unloading at this plant site five or six weeks. Too, Boyle, then 18 years old, testified that he had operated defendants' dump truck some four months, part of the time at this plant site, loading and unloading in accordance with Murray's directions. The foregoing suffices to warrant the instruction. Indeed, Boyle's testimony, including his alleged reliance on Murray's directions, tends to show that the practice existed and that he was well aware of such practice.

The crux of this case was whether Boyle backed his truck in accordance with instructions from Murray. It is evident that the jury did not accept defendants' evidence and contention. Perhaps they thought it unreasonable that Murray, standing at the Jones truck then backed to the "refuse pile" for unloading, would give directions to Boyle to back his truck to the very same spot. Too, while Boyle and Hutchins testi-

fied that Murray gave certain directions to Boyle, it is noteworthy that, as indicated above, the testimony of Jones was *contra*.

We have discussed the assignments of error on which defendants appear to lay major emphasis. The others are too numerous to warrant discussion in detail. Suffice to say, each has been carefully considered; and we find no error sufficiently prejudicial to warrant a new trial. Indeed, the impression prevails that the case was well and fairly tried in accordance with settled principles of law.

No error.

JOHNSON, J., not sitting.