KIRKMAN v. BAUCOM ; FULLER v. BAUCOM AND WILLIAMS v. KIRKMAN.

Petitioner's appeal: No error.
Respondents' appeal: Modified and affirmed.

CHARLES H. KIRKMAN, ADMINISTRATOR OF THE ESTATE OF LOUIS WOLF, DECEASED, v. GEORGE H. BAUCOM, JR., TRADING AS ACME PRODUCE COMPANY, AND L. SNEED HIGH, ADMINISTRATOR OF THE ESTATE OF GEORGE H. BAUCOM, JR., NOW DECEASED.

EDWARD F. FULLER v. GEORGE H. BAUCOM, JR., TRADING AS ACME PRODUCE COMPANY, AND L. SNEED HIGH, ADMINISTRATOR OF THE ESTATE OF GEORGE H. BAUCOM, JR., NOW DECEASED.

JULIA WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF BELVIN WILLIAMS, DECEASED, v. CHARLES KIRKMAN, ADMINISTRATOR OF THE ESTATE OF LOUIS WOLF, DECEASED, AND EDWARD FULLER.

(Filed 28 June, 1957.)

1. **Appeal and Error § 51—**

Where motions to nonsuit are made at the close of plaintiffs' evidence and renewed at the close of all the evidence, only the motions made at the close of all the evidence are to be considered on appeal.

2. **Trial § 22a—**

On motion to nonsuit, the evidence, and all inferences that may be fairly drawn therefrom, must be considered in the light most favorable to plaintiffs.

3. **Trial § 22c—**

Discrepancies and contradictions, even in plaintiffs' evidence, must be resolved in their favor.

4. **Trial § 22b—**

Evidence offered by defendants which contradicts that offered by plaintiffs or which tends to establish a different state of facts, must be ignored.

5. **Automobiles § 37—**

What occurred immediately prior to and at the time of collision may be established by circumstantial evidence, either alone or in combination with direct evidence.

6. **Automobiles § 41c—**

Testimony of witnesses to the effect that at the time of impact they saw fire on the east side of the highway, together with testimony as to the physical facts at the scene immediately thereafter, including the position of the vehicles, and the indications thereoh' of the point of impact, marks and tire tracks, etc., *is held* sufficient to be submitted to the jury on the

theory that the collision between the north-bound and south-bound vehicles occurred on the east side of the highway while the vehicle traveling north was on its right side thereof.

**7. Automobiles § 39—**

The testimony of a witness as to the marks observed by him on the highway at the scene of the accident involves no expression of opinion, but relates to facts disclosed from actual observation.

**8. Appeal and Error § 41—**

The admission of testimony over objection cannot be held prejudicial when the witness thereafter testifies without objection to essentially the same facts.

**9. Appeal and Error § 42—**

The charge of the court upon the burden of proof on the numerous issues involved *held* without error when construed as a whole.

**10. Trial § 31e—**

The trial court properly refrains from commenting on the probative value, weight or effect of negative testimony.

**11. Automobiles § 46—**

Objection to the charge on the ground that it instructed the jury as to the law in overtaking and passing another vehicle on the highway, G.S. 20-150, but failed to explain the law applicable to evidence that the driver of a north-bound vehicle pulled to his left preparatory to passing a preceding vehicle and struck a south-bound vehicle while the north-bound vehicle was over the center line to the west, *held* untenable in the absence of special request when the court correctly charged that if the north-bound vehicle was driven to its left of the center of the highway, such action would constitute negligence *per se*. G.S. 20-146, G.S. 20-148.

**12. Same—**

Appellants' contention that their driver was confronted with a sudden emergency when the driver of the vehicle traveling in the opposite direction pulled to his left preparatory to passing a preceding vehicle, and that appellants' driver pulled to his left in an attempt to avoid a head-on collision, *held* submitted to the jury in a manner favorable to appellants, and their exception to the charge in this respect is untenable.

APPEALS from *Nimocks, J.*, November-December Term, 1956, of CUMBERLAND.

Three actions, consolidated for trial, growing out of a collision on 26 January, 1953, in Robeson County, between a tractor-trailer combination owned by Fuller and operated by Wolf as Fuller's agent, and an International straight body truck, owned by Baucom and operated by Williams as Baucom's agent, proximately causing the death of Wolf and of Williams and great damage to the vehicles.

The actions are: (1) by Wolf's administrator, to recover damages for the alleged wrongful death of his intestate, herein called the Wolf case; (2) by Fuller, to recover for the damage to his tractor-trailer, herein called the Fuller case; and (3) by Williams' administrator, to recover damages for the alleged wrongful death of his intestate, herein called the Williams case.

In the Wolf and Fuller cases, Baucom, the defendant, denied negligence, pleaded contributory negligence, and alleged a cross action for damages to his truck. In each case, the plaintiff, in replying to Baucom's said cross action, pleaded contributory negligence.

In the Williams case, Wolf's administrator and Fuller, the defendants, denied negligence and pleaded contributory negligence.

After filing pleadings, but before trial, Baucom, originally the defendant in the Wolf and Fuller cases, died; and Baucom's administrator, substituted as defendant, adopted his intestate's pleadings and defended.

Separate issues were submitted in each case. In the Wolf case and also in the Fuller case, six issues, negligence, contributory negligence and damages with reference to plaintiff's action, and negligence, contributory negligence and damages with reference to Baucom's cross action, were submitted. In the Williams case, three issues, negligence, contributory negligence and damages, were submitted.

Pertinent to liability, the issues in each case presented the same ultimate questions: Was the collision proximately caused by the negligence of Williams? Was it proximately caused by the negligence of Wolf? Was it proximately caused by the concurring and contributing negligence of both Williams and Wolf?

The verdicts established that the collision, death of Wolf and damage to Fuller's property were proximately caused by the negligence of Williams as alleged by the plaintiffs in the Wolf and Fuller cases; and that the collision and its tragic results were *not* proximately caused or contributed to by the negligence (alleged by appellants) of Wolf.

In accordance with the verdicts, judgments were entered: (1) in the Wolf case, judgment for plaintiff for $10,000.00; (2) in the Fuller case, judgment for plaintiff for $6,000.00; (3) in the Williams case, judgment that plaintiff therein recover nothing.

The defendant in the Wolf and Fuller cases, and the plaintiff in the Williams case, excepted and appealed.

Additional facts are set forth in the opinion.

*Anderson, Nimocks & Broadfoot for appellants.*
*Oates, Quillin & Russ and Nance, Barrington & Collier for appellees.*

BOBBITT, J.　Baucom's administrator, the defendant-appellant in the Wolf and Fuller cases, insists that the court erred in refusing to allow his motions for judgments of involuntary nonsuit.

In considering this question, these well established rules apply: 1. Only the motions made at the close of all the evidence are to be considered. *Murray v. Wyatt,* 245 N.C. 123, 95 S.E. 2d 541. 2. The evidence, and all inferences that may be fairly drawn therefrom, must be considered in the light most favorable to the plaintiffs. *Brafford v. Cook,* 232 N.C. 699, 62 S.E. 2d 327. 3. Discrepancies and contradictions, even in the plaintiffs' evidence, must be resolved in their favor. *Keaton v. Taxi Co.,* 241 N.C. 589, 86 S.E. 2d 93. 4. Evidence offered by defendant, which contradicts that of plaintiffs or tends to establish a different state of facts, must be ignored. *Register v. Gibbs,* 233 N.C. 456, 64 S.E. 2d 280.

The collision occurred between 6:15 and 6:30 a.m. on Highway #301, between St. Pauls and Fayetteville, in the area where this north-south highway traverses Buckhorn Swamp. In this area, the highway, as it approaches a bridge spanning "the run of the swamp," is on a fill. Wolf (Fuller tractor-trailer) was going north. Williams (Baucom truck) was going south. The collision occurred north of the bridge.

The parties (appellees) who alleged that Williams' negligence proximately caused the collision did so on the basis of factual allegations to the effect that as the two vehicles, proceeding in opposite directions, were about to meet, Williams, without signal or warning, operated Baucom's truck across the center of said highway into his left lane, the lane designated for northbound traffic, and drove it directly and violently into the Fuller tractor-trailer, the point of collision being on Wolf's right and proper side of the highway.

The parties (appellants) who alleged that Wolf's negligence proximately caused the collision did so on the basis of factual allegations to the effect that Wolf was proceeding behind another tractor-trailer, which he was attempting to pass, and that Wolf, immediately after crossing the bridge, drove to his left of the center of the highway, completely blocking the west side, directly in the path of the oncoming Baucom truck.

In the Fuller case, Baucom alleged that Wolf "pulled over and across the center line of said highway, onto his left side of the same in the direction he was traveling and directly into the truck of the defendant." In the Wolf and Williams cases, appellants' allegations are indefinite as to whether the collision occurred on the east or west side of the highway. Baucom, the defendant in the Wolf and Fuller cases, alleged that, *if the collision occurred on the east side,* Williams exercised due care to avoid a collision in the emergency situation created by Wolf's negligence. In the Williams case, Williams' administrator alleged that

his intestate exercised due care in doing what he did when suddenly confronted by the emergency created by Wolf's negligence.

The drivers were killed instantly. No witness saw the actual impact. The evidence consists of testimony as to what transpired up to within a few seconds of the collision and as to what was observed thereafter.

What occurred immediately prior to and at the moment of impact may be established by circumstantial evidence, either alone or in combination with direct evidence. *Bridges v. Graham, ante,* 371, 98 S.E. 2d 492, and cases cited; *Wyrick v. Ballard Co., Inc.,* 224 N.C. 301, 29 S.E. 2d 900; *Edwards v. Cross,* 233 N.C. 354, 64 S.E. 2d 6.

There was evidence tending to establish the facts narrated below.

Three vehicles, all northbound and in the east or right lane, entered the Buckhorn Swamp area in this order: (1) an oil tanker, operated by Cottle, appellants' witness, (2) the Fuller tractor-trailer, operated by Wolf, and (3) the Brigman car, operated by appellees' witness Brigman with whom appellees' witnesses Woodell and Schwartz were riding. Northward, the highway curved to the right. The bridge could not be observed until one reached the "big bend" in the curve. When the oil tanker and thereafter the tractor-trailer rounded the "big bend," the distance between these vehicles was 250 yards or more. When the tractor-trailer rounded the "big bend," the Brigman car was 200-250 yards behind it. The occupants of the Brigman car lost sight of the tractor-trailer, "for just a matter of seconds on account of the curve," until the Brigman car reached the "big bend."

The Brown house was some 150 yards south of the bridge. When Brigman entered the "big bend," some 50-75 yards south of the Brown house, he saw "a blaze of fire pop up on the east side of the highway, on the north end of the swamp." He testified: "The fire was on the front of the tractor-trailer." Woodell and Schwartz also testified that the blaze of fire observed by them was on the east side of the highway.

As stated in appellants' brief: "Undisputed testimony discloses that the primary evidence of impact damage on the southbound Baucom truck was on the right side of the cab, about at the door of the cab. The principal indication of impact damage to the Fuller tractor was the right front, extending across to the left headlight."

After the collision, the Fuller trailer, lying on its left side, blocked most of the highway. The Fuller tractor, facing east, was lying on its left side, over the east shoulder, "down the embankment." The Baucom truck was south of the tractor-trailer. Its front wheels were on the east shoulder, the rear wheels down the east embankment, the van or body "knocked off up into the woods."

The collision occurred shortly before daylight. The lights were burning on all vehicles.

In the area where the collision occurred, the base of Highway #301 was concrete; but, when repaired, the highway had been covered with black top. A white line in the center indicated the respective lanes of travel. The paved portion was 21½ feet wide.

The investigating State Highway Patrolman (Daniels) reached the scene shortly after the collision, while the respective drivers were pinned in the burning tractor and in the burning truck. He found no marks leading from the Baucom truck to any portion of the west side of the highway. He found a tire mark, "traceable in continuous sequence from the east shoulder," which extended to the right front of the Baucom truck. He found a black mark on the east side of the highway, leading to the left rear wheel of the tractor. He found two round indentations or markings in the tar on the east side of the highway, approximately 18 inches apart. The rear wheels of the trailer were dual tandem wheels approximately 18 inches apart. He found no markings or indentations on the west side of the highway except a mark (cut or scratch) that led to the rear of "the jackknifed trailer." He found, on the east side, south of where the black marks started, "two feet of skid marks of a dual-wheel vehicle, four tires skid marks." He testified: "I did not find any tire marks or skid marks on the west side of the highway." Again: "I found tire marks, skid marks on the east side." Again: "The majority of the debris was in the northbound lane on the east side. There were some dirt and some pieces of metal to the left, on the west side, but very little."

On Highway #301, proceeding south, Williams' approach *to the bridge* was "a long, drawn out curve," 800-900 feet, to his right.

It is unnecessary to set out the evidence in greater detail. After careful consideration of the testimony of each witness, the conclusion reached is that, when considered in the light most favorable to the plaintiffs in the Wolf and Fuller cases, the evidence is sufficient to support findings that the collision took place on the east side, Wolf's right side, of the highway, and that Williams failed to follow the curve as he neared the bridge but crossed over in front of the oncoming tractor-trailer, and to warrant the verdicts that the collision was caused by the alleged negligence of Williams.

True, the evidence offered by appellants, primarily the testimony of Cottle, tends to show an *entirely different state of facts.* In substance, it is to the effect that Wolf, close behind Cottle, had pulled out to the left to pass the oil tanker about the time the oil tanker and the Baucom truck met and passed, and that the collision occurred immediately thereafter. Suffice to say, the jury did not accept Cottle's version; and, without detailed discussion, it is noted that much evidence casts doubt upon the credibility of Cottle's testimony.

If Cottle's testimony were accepted, it would appear therefrom that the impact occurred on the west side of the highway. Even so, the court below gave Baucom the full benefit of his said conditional defense and contention by charging the jury as follows: "If you should find . . . that . . . Williams, suddenly confronted with a ravine or a drop-off of about four feet into the swamp on the right of the highway, his side of the highway, was blocked by the Fuller tractor-trailer unit driven by . . . Wolf, if you should find that he attempted to pass on the left side of the highway, and then while so confronted with this sudden emergency he acted as a prudent person would have acted under the same or similar circumstances, then you would find that . . . Williams was not negligent in so doing."

The remaining assignments, urged as ground for a new trial, are brought forward in behalf of all appellants.

The assignments relating to portions of the testimony of Daniels and of Guittard are untenable. Daniels' testimony as to marks on the highway involved no expression of opinion but was confined to facts disclosed by actual observation. Moreover, he testified later, without objection, to essentially the same facts. *Price v. Gray, ante,* 162, 97 S.E. 2d 844. As to Guittard's testimony, appellants' contentions go to its probative value, not its competency.

Eleven assignments are directed to the charge as related to the burden of proof. Early in the charge, the court meticulously and correctly instructed the jury as to the burden of proof as to each of the fifteen issues. Moreover, after doing so, the court cautioned the jury to bear in mind that in relation to each issue the burden of proof was upon the party who made the allegations to establish by the greater weight of the evidence the facts as alleged. Appellants contend, however, that the "Court laid greater stress upon the 'burden of proof' as to the issues involving the appellants than on those of the appellees when the charge is taken as a whole." Suffice to say, consideration of the charge as a whole does not disclose prejudicial error in this respect. Rather, our impression is that the trial judge performed this tedious task in an impartial manner.

Assignment #26 is directed to the court's failure to declare and explain the law arising on the evidence as required by G.S. 1-180 "concerning probative value, weight or effect of 'negative' testimony." This assignment is without merit. The applicable rule is stated in *Murray v. Wyatt, supra.*

Assignment #22 is directed to the failure of the court to explain and apply G.S. 20-150 "to the evidence of Wolf's attempt to pass a forward vehicle (the oil tanker) directly in face of oncoming traffic, the truck of Baucom, and the effect of attempting to pass, although not actually passing a forward vehicle which one (Wolf) had overtaken." It is

noted, first, that G.S. 20-150 was relevant only in relation to Cottle's testimony; and, second, that the court instructed the jury "that it is negligence *per se,* that is, negligence in itself, for the operator of a motor vehicle to overtake and pass another vehicle traveling in the same direction unless the left side is clearly visible and free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety." However, appellants assert that "it was not contended nor was there any evidence to the effect that Wolf had gotten along side of or actually reached the rear of the oil tanker," but "that Wolf, driver of the Fuller truck, came up behind the oil tanker proceeding ahead of him and swung out onto the left side of the highway PREPARATORY TO ATTEMPTING TO PASS." The error, appellants contend, was the failure to explain and apply G.S. 20-150 to a factual situation where the driver pulls out to his left *preparatory to attempting to pass.* Appellants did not request a special instruction on this subject, nor does the assignment indicate the instructions the appellants have in mind. To say that Wolf pulled out to his left, preparatory to attempting to pass the oil tanker, would seem but another way of saying that Wolf was wholly or partly on his left (west) side of the highway; and we think the court made it clear that if Wolf drove to the left of the center of the highway, such action constituted negligence *per se,* to wit, a violation of G.S. 20-146 and of G.S. 20-148.

In discussing assignment #22, appellants state: "One theory of the case was that it was through this opening or clearance between the tractor-trailer and the oil tanker that the Baucom truck sought to go to avoid a head-on collision with the Fuller tractor-trailer." It is noted that this *theory* of appellants was submitted to the jury in a manner favorable to them in the quoted instruction relating to the sudden emergency doctrine.

After careful consideration of the entire record, including each of appellants' assignments of error, the conclusion reached is that the case was one for jury determination on the issues submitted, and that appellants have failed to show error deemed sufficiently prejudicial to warrant a new trial.

No error.