EVELYN GRACE COLEMAN, ADMINISTRATRIX FOR THE ESTATE OF MONICA AVIS
COBB AND MARION ANNETTE COLEMAN v. KATHY LUNCEFORD
COOPER, (FORMERLY KATHY LUNCEFORD), WAKE COUNTY, THE CITY
OF RALEIGH, AND THE CITY OF RALEIGH POLICE DEPARTMENT

No. 8710SC834

(Filed 15 March 1988)

1. **Municipal Corporations §§ 10 and 12.3— wrongful death action—police depart-
ment—not person in being**

The trial court did not err by granting summary judgment against plain-
tiffs in an action against the Raleigh Police Department. Only persons in being
may be sued unless a statute provides to the contrary and there is no statute
authorizing suit against a police department in North Carolina.

2. **Municipal Corporations § 9.1— witnesses killed—wrongful death action—no
duty by police to protect**

The trial court did not err in entering summary judgment for the City of
Raleigh in a wrongful death action arising from the deaths of two child wit-
nesses who were also victims of sexual abuse where the undisputed evidence
tended to show that, although Officer Phillips knew of the prior acts of
violence committed by Melvin Coleman towards the victims, the children had
indicated to him that they were not afraid of Coleman; the record is devoid of
any evidence which would tend to show that Officer Phillips ever told plaintiff
or her intestates that any kind of protection would be afforded them; the
evidence also fails to establish a special relationship between the police and
plaintiff's intestates; and there was no duty on the part of the police depart-
ment which would give rise to any liability involving the City of Raleigh.

3. **Counties § 9— abused children—wrongful death action—liability of county and
social worker**

The trial court erred by granting summary judgment for defendant social
worker and Wake County in an action arising from the wrongful death of
abused children where the social worker was fully aware that plaintiff's in-
testates had suffered physical and sexual abuse at the hands of Melvin Cole-
man; the social worker was also aware that physical abuse had at times been
directed at plaintiff; plaintiff had related to the social worker her concern
about the reaction of Melvin Coleman when he found out about the investiga-
tion; the social worker had given instructions to school authorities that Melvin
Coleman was not to be allowed access to the children; and the record is other-
wise silent with regard to what determination if any was made concerning the
risk of harm to plaintiff's intestates or whether they should have been pro-
vided any type of protective services.

4. **Parent and Child § 3; Death § 11— murder of abused children—wrongful death
action—contributory negligence by parent**

In a wrongful death action by a parent arising from the murder of her two
abused children after an investigation began into their abuse, the question of
the parent's contributory negligence was a matter for the jury where plaintiff

Coleman v. Cooper

parent had the same information if not more concerning the potential risks to the children as the social worker but took no action other than to ask a neighbor to watch for the car of the man who had abused them when the children were alone, the social worker had asserted that adequate police protection would be provided if needed, and plaintiff asserted that she thought police protection was being provided.

APPEAL by plaintiff from *Farmer (Robert L.), Judge.* Orders entered 27 May 1987 and 5 June 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 3 February 1988.

Plaintiff, administratrix of the estates of her minor daughters, brought this action for damages for the wrongful deaths of plaintiff's intestates resulting from the alleged negligence of defendants. On 27 May 1987, the trial court entered an order granting summary judgment for defendants Kathy L. Cooper (Cooper) and Wake County. On 5 June 1987, the trial court granted summary judgment for defendants City of Raleigh and City of Raleigh Police Department (Police Department). Plaintiff appeals.

*Blanchard, Tucker, Twiggs & Abrams, P.A., by Douglas B. Abrams and Anna Neal Currin, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Grady S. Patterson, Jr., and Susan K. Burkhart; Corrine G. Russell and Michael R. Ferrell for defendants-appellees Kathy Lunceford Cooper and Wake County.*

*Womble Carlyle Sandridge & Rice, by Richard T. Rice and J. Daniel McNatt; and Conely & Stephens, P.A., by Richard B. Conely, for defendants-appellees the City of Raleigh and the City of Raleigh Police Department.*

SMITH, Judge.

The undisputed facts as admitted and as appear from affidavits and depositions filed in this cause are as follows: Plaintiff's intestates were her two minor daughters. Defendant Cooper, an employee of the Wake County Department of Social Services (DSS), received information which led her to believe that the two minors might be victims of sexual abuse. Cooper interviewed the children and each related incidents of extensive sexual contact with Melvin Coleman, the natural father of the youngest child and

the stepfather of the eldest child. Melvin Coleman had divorced plaintiff in 1979.

Cooper interviewed plaintiff who acknowledged that the children had told her of sexual abuse by Melvin Coleman. Cooper informed plaintiff that the girls would have to be examined by a physician and interviewed by the police. She also told plaintiff that the children might have to testify. Plaintiff and the children related to Cooper past acts of physical violence directed at them by Melvin Coleman. Plaintiff also expressed her concern about Melvin Coleman's reaction when he found out about the investigation. Cooper assured plaintiff of adequate and complete police protection if it were needed.

Thereafter, the two minor children were examined by a physician. On 5 March 1985, they were interviewed by Officer Rodger Phillips (Phillips) of the Raleigh Police Department. The girls told Phillips details of past physical and sexual abuse by Melvin Coleman. However, each girl stated that she was not afraid of Melvin Coleman.

Phillips subsequently interviewed Melvin Coleman on 6 March 1985. Mr. Coleman refused to make any statement. Phillips noted that Mr. Coleman was calm and well-dressed. His entire criminal record, available to Phillips, consisted of a speeding conviction. On 1 April 1985, Phillips appeared and testified before the Grand Jury of Wake County regarding the sexual abuse. At approximately 5:00 p.m. that afternoon, Phillips contacted the Wake County District Attorney's office and was informed that true bills of indictment had been returned against Melvin Coleman. The following day, 2 April 1985, Phillips asked the district attorney's office to have prepared the orders for arrest for Melvin Coleman. These documents would not normally be received by the Police Department for several more days. The orders of arrest were prepared on that date but Phillips did not pick them up because he was involved in another investigation. Phillips did phone Mr. Michael Dodd, an attorney who had represented Melvin Coleman with regard to the matters under investigation, and told Mr. Dodd of the grand jury's action. Mr. Dodd informed Phillips that he was no longer Melvin Coleman's attorney but that he would call Mr. Coleman and ask him to turn himself in the next day.

On the morning of 3 April 1985, Phillips was involved in another investigation and requested that Officer Keeter pick up the copies of the Bills of Indictment and the orders of arrest at the Wake County Courthouse. Officer Keeter returned those documents to Phillips at the Municipal Building at about 9:30 a.m. that morning. At approximately 11:00 a.m., Phillips learned that shortly after 9:00 a.m. a man later identified as Melvin Coleman was seen running from the mobile home where plaintiff and her intestates resided. It was subsequently discovered that plaintiff's intestates had been murdered and the mobile home in which they resided had been set ablaze.

It is uncontroverted that the Police Department has no policy concerning the protection of witnesses and that protection is not usually provided. It further appears that in most instances in which a defendant is represented by counsel, the Police Department customarily notifies counsel when charges are initiated. The record before this Court indicates that the City and County have liability insurance.

Plaintiff brings forward three assignments of error. By her first assignment of error, she contends the trial court erred by refusing to consider the affidavits of certain witnesses at the summary judgment hearing. By her second and third assignments of error, she contends the trial court erred in granting the summary judgment motions in favor of defendants.

I

Defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [defendants are] entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). If the pleadings and proof establish that no cause of action exists, summary judgment is proper. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). If the pleadings establish the existence of a cause of action, summary judgment should be granted cautiously in negligence cases in which the jury ordinarily applies a standard of care to the facts of the case. *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979). In reaching its determination that no issues of material fact exist and that a party is entitled to judgment as a matter of law, the trial court must

view the record in the light most favorable to the non-movant, *Patterson v. Reid*, 10 N.C. App. 22, 178 S.E. 2d 1 (1970), and draw all reasonable inferences in favor of the non-movant. *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E. 2d 289 (1974).

We hold that as to defendants City of Raleigh and Raleigh Police Department summary judgment was properly entered as no cause of action exists. As to defendants Cooper and Wake County, we hold that the granting of summary judgment was error. In view of our decisions, it is not necessary to address plaintiff's first assignment of error.

## II

[1] The trial court's order granting summary judgment for the Raleigh Police Department was proper in all respects. Unless a statute provides to the contrary, only persons in being may be sued. *McPherson v. Bank*, 240 N.C. 1, 81 S.E. 2d 386 (1954). In North Carolina there is no statute authorizing suit against a police department. The Police Department is a "component part[] of defendant City . . . and as such lack[s] the capacity to be sued." *Jones v. City of Greensboro*, 51 N.C. App. 571, 593, 277 S.E. 2d 562, 576 (1981).

## III

[2] A more difficult question is presented by the lower court's order granting summary judgment for the City of Raleigh. Ordinarily, a municipality providing police services is engaged in a governmental function for which there is no liability. *Croom v. Burgaw*, 259 N.C. 60, 129 S.E. 2d 586 (1963). By purchasing liability insurance, municipalities in this State waive the defense of governmental immunity to the extent of insurance coverage. G.S. 160A-485. A waiver of governmental immunity, however, does not create a cause of action where none previously existed. *Riddoch v. State*, 68 Wash. 329, 123 P. 450 (1912); 57 Am. Jur. 2d *Municipal, School, and State Tort Liability*, Sec. 72.

In tort, it is axiomatic that there is no liability unless the law imposes a duty. *Stanford v. Owens*, 46 N.C. App. 388, 265 S.E. 2d 617, *disc. rev. denied*, 301 N.C. 95 (1980); *Paschall v. N.C. Dept. of Correction*, 88 N.C. App. 520, 364 S.E. 2d 144 (1988). Actionable "[n]egligence is the failure to exercise proper care in the performance of a *legal duty* which [a] defendant owe[s] the plaintiff under

the circumstances surrounding them. *Mattingly v. R.R.*, 253 N.C. 746, 117 S.E. 2d 844. The breach of duty may be by negligent act or a negligent failure to act. *Williams v. Kirkman*, 246 N.C. 510, 98 S.E. 2d 922." *Moore v. Moore*, 268 N.C. 110, 112-13, 150 S.E. 2d 75, 77 (1966) (emphasis added).

A decision with reference to the potential liability of the City of Raleigh first requires that this Court examine the duty, if any, owed by the city, through its police department, to plaintiff's intestates. In furnishing police protection, a municipality ordinarily acts for the benefit of the public at large and not for a specific individual. *Chambers-Castanes v. King County*, 100 Wash. 2d 275, 669 P. 2d 451 (1983); *Evers v. Westerburg*, 38 A.D. 2d 751, 329 N.Y.S. 2d 615, *appeal denied*, 30 N.Y. 2d 486, 286 N.E. 2d 926, 335 N.Y.S. 2d 1025 (1972), *aff'd*, 32 N.Y. 2d 684, 296 N.E. 2d 257, 343 N.Y.S. 2d 361 (1973); *Food Fair v. City of Evansville*, 149 Ind. App. 387, 272 N.E. 2d 871 (1971); *Evett v. City of Inverness*, 224 So. 2d 365 (Fla. Dist. Ct. App. 1969), *cert. dismissed*, 232 So. 2d 18 (1970); *Keane v. City of Chicago*, 98 Ill. App. 2d 460, 240 N.E. 2d 321 (1968). As the duty is to the general public rather than to a specific individual, no liability exists for the failure to furnish police protection. *Warren v. District of Columbia*, 444 A. 2d 1 (D.C. 1981); *Evett v. City of Inverness, supra; Keane v. City of Chicago, supra*. The reason for the rule has been stated thusly:

> The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources . . . should be allocated and without predictable limits. This is quite different from the predictable allocation of resources and liabilities when public hospitals, rapid transit systems, or even highways are provided.

*Riss v. City of New York*, 22 N.Y. 2d 579, 581-82, 240 N.E. 2d 860, 860-61, 293 N.Y.S. 2d 897, 898 (1968). *Accord Cuffy v. City of New York*, 69 N.Y. 2d 255, 505 N.E. 2d 937, 513 N.Y.S. 2d 372 (1987).

One exception to the general rule of no liability for failure to provide police protection arises, however, when there is a special

relationship between the injured party and the police. *Swanner v. United States*, 309 F. Supp. 1183 (M.D. Ala. 1970) (United States has a special duty for protection of undercover agents); *Florence v. Goldberg*, 44 N.Y. 2d 189, 375 N.E. 2d 763, 404 N.Y.S. 2d 583 (1978) (special relationship created by regularly furnishing school crossing guards); *Henderson v. City of St. Petersburg*, 247 So. 2d 23 (Fla. Dist. Ct. App.), *cert. denied*, 250 So. 2d 643 (1971) (recognized a special duty but found none to exist where the victim was assured by police that he would be protected); *Gardner v. Village of Chicago Ridge*, 128 Ill. App. 2d 157, 262 N.E. 2d 829 (1970), *cert. denied*, 403 U.S. 919, 29 L.Ed. 2d 696, 91 S.Ct. 2230 (1971) (city held subject to liability where police failed to protect a witness summoned to make an identification, the police knowing the assailant had a violent temper and was capable of physical violence); *Schuster v. City of New York*, 5 N.Y. 2d 75, 154 N.E. 2d 534, 180 N.Y.S. 2d 265 (1958) (a special duty owed where plaintiff's intestate was murdered after supplying police with information leading to the arrest of a dangerous fugitive).

A second exception to the general rule of no liability arises when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered. *Cuffy v. City of New York, supra; Smith v. City of New York*, 122 A.D. 2d 133, 504 N.Y.S. 2d 696, *appeal denied*, 68 N.Y. 2d 611, 502 N.E. 2d 1007, 510 N.Y.S. 2d 1025 (1986); *Bain v. City of Rochester*, 115 A.D. 2d 957, 497 N.Y.S. 2d 785 (1985), *appeal denied*, 67 N.Y. 2d 606, 492 N.E. 2d 1233, 501 N.Y.S. 2d 1025 (1986); *Gallogy v. Village of Mohawk*, 96 A.D. 2d 710, 465 N.Y.S. 2d 376 (1983). We note that in these cases the same result could have been reached by determining that a special relationship did or did not exist between the police and the party injured.

In the case now before the Court, the undisputed evidence tends to show that although Officer Phillips knew of the prior acts of violence committed by Melvin Coleman towards the victims, the children had indicated to him that they were not afraid of their father. Further, the record is devoid of any evidence which would tend to show that Officer Phillips ever told plaintiff or her intestates that any kind of protection would be afforded them. The evidence also fails to establish any special relationship

between the police and plaintiff's intestates. Thus, there is no duty on the part of the Police Department which would give rise to any liability involving the City of Raleigh. The only connection between Officer Phillips and the two young victims was that which arose as a result of the officer's interviews. The evidence clearly shows that plaintiff's intestates were merely potential witnesses who would likely be called by the State at the time of trial. If liability were to be imposed on the City in this instance, law enforcement in this State would be required to protect almost every potential witness to avoid liability.

IV

[3]  Wake County and Cooper have alleged sovereign immunity as a defense. Counties, like cities, may waive governmental immunity by purchasing liability insurance. G.S. 153A-435. By purchasing liability insurance, Wake County has waived this defense to the extent of coverage. G.S. 153A-435(a).

Neither appellant nor appellees, Wake County and Cooper, have cited to this Court a case from any jurisdiction which imposes tort liability against a unit of government or a social services employee for failure to protect a minor from harm. The federal courts have acknowledged that, in some instances, failure to carry out the statutory duties imposed upon a social worker or a welfare agency can result in liability under 42 U.S.C. Sec. 1983. *Doe v. New York City Dept. of Social Services*, 649 F. 2d 134 (2d Cir. 1981); *Estate of Bailey by Oare v. County of York*, 768 F. 2d 503 (3d Cir. 1985); *Jensen v. Conrad*, 747 F. 2d 185 (4th Cir. 1984), *cert. denied*, 470 U.S. 1052, 84 L.Ed. 2d 818, 105 S.Ct. 1754 (1985).

In *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955), our Supreme Court held that a standard of conduct may be determined by reference to a statute which imposes upon a person a specific duty for the protection of others so that a violation of the statute is negligence *per se*. The Restatement (Second) of Torts, Sec. 286 provides:

When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an

administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

The General Assembly has enacted a statute establishing the standard of conduct to be exercised by DSS in protecting an abused juvenile, as defined in G.S. 7A-517(1). Both of plaintiff's intestates were abused juveniles within the statutory definition. G.S. 7A-544 provides in part:

When a report of abuse or neglect is received, the Director of the Department of Social Services shall make a prompt and thorough investigation in order to ascertain the facts of the case, the extent of the abuse or neglect, *and the risk of harm to the juvenile*, in order to determine whether protective services should be provided or the complaint filed as a petition.

. . .

If the investigation reveals abuse or neglect, the Director shall decide whether *immediate removal* of the juvenile or any other juveniles . . . *is necessary* for their protection. If immediate removal does not seem necessary, the Director *shall immediately provide or arrange for protective services.* If the parent or other caretaker refuses to accept the protective services . . ., the Director shall sign a complaint seeking to invoke the jurisdiction of the court for the protection of the juvenile or juveniles.

If *immediate removal seems necessary for the protection of the juvenile or other juveniles . . .*, the Director shall sign a complaint which alleges the applicable facts to invoke the jurisdiction of the court. Where the investigation shows that

it is warranted, a protective services worker may assume temporary custody of the juvenile for the juvenile's protection pursuant to Article 46 of this Chapter.

(Emphasis added.) Although G.S. 7A-544 has not been previously construed, it appears that one of its specific purposes is the protection of minors from harm. Plaintiff's intestates are within the class intended to be protected by G.S. 7A-544 and the harm resulting from Mr. Coleman's actions is the specific type of harm which the statute was intended to prevent. We hold that a violation of this statute can give rise to an action for negligence.

In the case *sub judice*, Cooper, an employee of DSS, was fully aware that plaintiff's intestates had suffered physical and sexual abuse at the hands of Melvin Coleman. Cooper was also aware that physical abuse had at times been directed at plaintiff. Plaintiff had related to Cooper her concern about the reaction of Melvin Coleman when he found out about the investigation. Cooper had also given instructions to school authorities that Melvin Coleman was not to be allowed access to the children. Other than this, the record is silent with regard to what determination, if any, was made concerning the risk of harm to plaintiff's intestates or whether they should have been provided any type of protective services.

Appellees' contention that Cooper is insulated from liability by G.S. 7A-550 is misplaced. This statute provides, in part, as follows:

Anyone who makes a report pursuant to this Article, cooperates with the county department of social services in any ensuing inquiry or investigation, testifies in any judicial proceeding resulting from the report, or otherwise participates in the program authorized by this Article, is immune from any civil or criminal liability that might otherwise be incurred or imposed for such action provided that the person was acting in good faith. In any proceeding involving liability, good faith is presumed.

G.S. 7A-550. The report referred to in this statute is clearly an initial report of child abuse, as specified in G.S. 7A-543, which is to be made to the Director of the Department of Social Services. This statute was intended to encourage citizens to report sus-

pected instances of child abuse to the Director of DSS without fear of potential liability if the report was made in good faith. It has no application to employees of DSS in the performance of their official duties.

V

**[4]**  Lastly, appellees Wake County and Cooper contend that the trial court properly granted summary judgment in that plaintiff was contributorily negligent as a matter of law. The appellees assert that contributory negligence is an absolute defense in an action for wrongful death where the negligent parent would be the beneficiary of the recovery. In support of their position, appellees cite *In re Estate of Ives*, 248 N.C. 176, 102 S.E. 2d 807 (1958); *Davenport v. Patrick*, 227 N.C. 686, 44 S.E. 2d 203 (1947); *Reid v. Coach Co.*, 215 N.C. 469, 2 S.E. 2d 578 (1939); and *McDowell v. Estate of Anderson*, 69 N.C. App. 725, 318 S.E. 2d 258 (1984).

At common law, a parent has the duty to protect his child. 59 Am. Jur. 2d *Parent and Child*, Sec. 14 (1987). In the performance of this duty, "[p]arents . . . are bound to provide such reasonable care and protection as an ordinarily prudent person, solicitous for the welfare of a child, would deem necessary." *Id.* at 147. This duty was recognized by our Supreme Court in *State v. Walden*, 306 N.C. 466, 293 S.E. 2d 780 (1982), in establishing criminal liability of a parent as an aider and abettor to child abuse. The General Assembly has also recognized this duty by enacting a criminal statute prohibiting a parent from creating or allowing to be created a substantial risk of physical injury to any child under sixteen years of age. G.S. 14-318.2. A similar standard is used to define an abused juvenile. G.S. 7A-517(1).

We can discern no justifiable reason for failing to apply the same duty in civil cases.

This is not to say that parents have the legal duty to place themselves in danger of death or great bodily harm . . . . To require such, would require every parent to exhibit courage and heroism which, although commendable in the extreme, cannot realistically be expected or required of all people. But parents do have the duty to take every step reasonably pos-

sible under the circumstances . . . to prevent harm to their children.

*State v. Walden*, 306 N.C. at 475, 293 S.E. 2d at 786. We hold that failure to perform this duty is negligence.

In the case at bar, plaintiff had the same information, if not more, concerning the potential risk to the children as did Cooper, but she took no action other than to ask a neighbor to watch for Melvin Coleman's car when the children were alone. In light of Cooper's assertion that adequate police protection would be provided if needed and plaintiff's assertion that she thought police protection was being provided, the question of plaintiff's contributory negligence becomes a matter for the jury. It must thus be determined by the jury whether plaintiff provided such reasonable care and protection to her intestates as an ordinary prudent person would deem necessary under the circumstances as they then existed.

As to the

Raleigh Police Department and the City of Raleigh—affirmed.

Kathy L. Cooper and Wake County—reversed.

Chief Judge HEDRICK and Judge BECTON concur.