G. FETZ LITAKER, ADMINISTRATOR OF THE ESTATE OF BILLY RAY LITAKER, DECEASED, v. CHARLES FRANKLIN BOST, BY HIS GENERAL GUARDIAN, E. L. BOST, AND CALEB WATSON BOST, III.

(Filed 11 December, 1957)

1. **Automobiles § 52—**

Evidence that the owner of the automobile was a passenger therein, and that the driver negligently operated the vehicle under the direction and control of the owner, resulting in the death of another passenger in the vehicle, is sufficient to overrule nonsuit in an action for wrongful death against the owner-passenger.

2. **Trial § 22b—**

Conflicts in the testimony must be resolved in plaintiff's favor upon motion to nonsuit.

3. **Automobiles § 49—Evidence held insufficient to show contributory negligence of passenger as a matter of law.**

Where there is conflict in the evidence as to whether the car in which intestate was riding was engaged in racing during the afternoon before the fatal trip so as to give intestate notice of the driver's recklessness or incompetence, and there is evidence tending to show that intestate was helped into the car for the fatal trip and was too intoxicated to be aware that the automobile was being driven at excessive speed and in a reckless manner in participating in races on the highway, the evidence, although sufficient to support a finding that intestate was aware of what was happening and was contributorily negligent in continuing to ride in the car under the circumstances, is insufficient to establish contributory negligence in this respect as a matter of law.

4. **Negligence § 18: Pleadings § 24a—**

It is not required that plaintiff's evidence in refutation on the issue of contributory negligence be supported by allegation, since the burden of proof on this issue is on defendants.

5. **Appeal and Error § 35—**

Where the charge of the court is not included in the record, it will be presumed that the jury was correctly instructed on every principle of law applicable to the facts.

6. **Trial § 36—**

The verdict of the jury may be construed with regard to the pleadings, evidence, admissions of the parties and the charge of the court in ascertaining its meaning with the view of sustaining it if possible.

7. **Appeal and Error § 39—**

The presumption is in favor of the correctness of the judgment in the lower court, and the burden is on appellant to show a denial of some substantial right.

8. **Automobiles § 54h: Negligence § 21—Verdict against defendant-owner held not inconsistent with finding that defendant-driver was not liable.**

Plaintiff's allegations were to the effect that his intestate was a passenger in an automobile and was fatally injured as a result of the negligent operation of the automobile by one of defendants who was driving under the supervision and control of the other defendant, who was the owner and also a passenger in the car. The evidence was conflicting as to whether the defendant specified was driving or whether the vehicle was operated at the time by yet another passenger. The verdict of the jury established that intestate was not killed by the negligence of the defendant named as driver, but that his death did result from the negligence of defendant-owner. *Held:* The verdict must be interpreted as finding that defendant-owner was responsible for the negligence of the driver, but that the passenger named as driver in the complaint was not operating the vehicle at the time of the accident, and the verdict, as so construed, is not inconsistent.

**9. Pleadings § 22b—Amendment to make allegations conform to proof held not to change substantially the claim against appealing defendant.**

Plaintiffs allegations were to the effect that his intestate was a passenger in an automobile and was fatally injured as a result of the negligent operation of the automobile by one of defendants who was driving under the supervision and control of the other defendant, who was the owner and also a passenger in the car. The evidence was conflicting as to whether the defendant specified was driving or whether the vehicle was operated at the time by yet another passenger. The verdict of the jury established liability on the part of defendant-owner, but that the defendant named as driver was not liable. After verdict, the court permitted plaintiff to amend the complaint to make the allegations conform to the evidence by alleging that the car was being driven by either one of the passengers referred to in the evidence, and that in either event defendant-owner was responsible for the negligence of the driver. *Held:* Under the facts of this case the amendment did not change substantially the plaintiff's claim against defendant-owner, and the variance prior to amendment did not mislead defendant-owner to his prejudice in the trial on the merits, G.S. 1-163, G.S. 1-165, G.S. 1-168, since the crucial fact in respect to defendant's liability was not the identity of the driver, but that defendant permitted or directed the negligent operation of the car.

**10. Automobiles § 52—**

Where the owner is an occupant in the car at the time of its negligent operation by another, the owner's liability for such negligent operation is not dependent upon the relationship of principal and agent in the ordinary sense, but upon the fact that he knowingly permits or directs the negligent operation of his car by another.

APPEAL by defendant Charles Franklin Bost from *Gwyn, J.,* March Term, 1957, of CABARRUS.

Action by administrator to recover damages for the alleged wrongful death of Billy Ray Litaker, his intestate.

On Sunday, September 12, 1954, about 7:15 p.m., the 1954 Chrysler New Yorker of defendant Charles Franklin Bost, traveling west on Highway 73 at a speed of 80-95 miles per hour, left the hard-surfaced portion, went 999 feet along the dirt shoulder, hit and broke a telephone pole, and finally came to rest upside-down in a cotton field some 117 feet from the telephone pole and some 40-48 feet north of Highway 73.

The four occupants, defendant Charles Franklin Bost, the owner, defendant Caleb Watson Bost, III, hereinafter called Watson Bost, Donald P. Stewart, Jr., hereinafter called Stewart, and plaintiff's intestate, hereinafter called Litaker, were thrown therefrom. Litaker was killed. Charles Franklin Bost received a serious head injury. Thereafter, he was adjudged incompetent; and his father, E. L. Bost, was duly appointed general guardian and defends this action in that capacity. Watson Bost and Stewart testified at the trial.

On March 11, 1955, plaintiff instituted three separate wrongful death actions against Stewart, Watson Bost and Charles Franklin Bost, respectively; but, instead of filing complaints,

plaintiff applied in each case for an order permitting his adverse examination of the defendant therein named. In each case, by consent order, plaintiff was permitted to examine the defendant adversely on six specific subjects, including "(2) As to the driver of the said vehicle in which the decedent was riding."

Plaintiff did not conduct any of the three adverse examinations so authorized. Instead, a voluntary nonsuit was entered in the separate actions against Stewart and Watson Bost. This was contemplated by a consent order signed August 23, 1955, whereby Watson Bost was joined as an additional defendant herein, to wit, the action originally against Charles Franklin Bost alone.

In complaint filed August 23, 1955, plaintiff alleged that the driver, defendant Watson Bost, operated the Chrysler at an unlawful and dangerous speed and in a reckless and wanton manner in utter disregard of the rights and safety of the passengers therein, lost control thereof and wrecked the Chrysler in the manner indicated above; that defendant Watson Bost so operated the Chrysler under the direction and supervision, and with the authority, consent and knowledge, of defendant Charles Franklin Bost, the owner, who was seated on the passenger side of the front seat of the car.

The defendants, represented by the same counsel, filed separate answers. Defendant Watson Bost, in his further answer and defense, alleged that Stewart was driving the car when the wreck occurred. Defendant Charles Franklin Bost admitted his ownership of the Chrysler; but, in respect of plaintiff's allegation that Watson Bost was the driver, he averred that he had no sufficient knowledge or information to form a belief as to the truth thereof and therefore denied it.

Each defendant pleaded the contributory negligence of plaintiff's intestate. Defendant Charles Franklin Bost's plea is preceded by this conditional clause: "If the plaintiff's intestate came to his death by the negligence of defendant Charles Franklin Bost, which is expressly denied, . . ." Defendant Watson Bost's plea is preceded by this conditional clause: "That even if this defendant were operating the said automobile on the occasion of the alleged accident, which is expressly denied, or if the said automobile were being operated by any person other than the plaintiff's intestate, . . ."

The gist of each defendant's plea of contributory negligence is indicated by this excerpt from defendant Charles Franklin Bost's further answer and defense: ". . . the plaintiff's intestate was himself guilty of negligence which directly and proximately contributed to and caused his death, in that he rode in the automobile of Charles Franklin Bost at a time when he knew or, by the exercise of due care, should have known that *the driver*

thereof was not driving same in a proper manner, and this defendant is informed and believes and so alleges that the plaintiff's intestate encouraged *said driver* to drive at a fast, reckless and unlawful rate of speed, when plaintiff's intestate knew, or by the exercise of due care should have known, that the automobile *was being driven* at an unlawful rate of speed and in excess of the rate of speed allowed by law at the point of and immediately east of the point of upset; and that plaintiff's intestate failed to protest the reckless and unlawful manner in which *the driver* was operating said automobile, and instead of protesting, the plaintiff's intestate encouraged the *said driver* to drive at a fast and unlawful rate of speed under the conditions then existing, when the plaintiff's intestate knew or, by the exercise of due care, should have known that *the driver* could not control the operation of said automobile and that the speed thereof should be decreased, and the plaintiff's intestate failed to exercise that degree of care which an ordinarily prudent person would or could have exercised under the same or similar conditions, . . ." (Italics added.)

Upon these pleadings, the case came on for trial; and both plaintiff and defendants offered evidence. The following issues were submitted to and answered by the jury, viz.:

"1. Was the plaintiff's intestate, Billy Ray Litaker, injured and killed by the negligence of the defendant Caleb W. Bost, III, as alleged in the Complaint? Answer: No.

"2. Was the plaintiff's intestate, Billy Ray Litaker, injured and killed by the negligence of the defendant Charles Franklin Bost, as alleged in the Complaint? Answer: YES.

"3. If so, did the plaintiff's intestate, Billy Ray Litaker, by his own negligence contribute to his injury and death? Answer: No.

"4. What amount, if any, is the plaintiff entitled to recover? Answer: $20,000.00."

After verdict, upon plaintiff's motion, the court entered an order permitting plaintiff to amend his complaint "to conform to the facts proved." Plaintiff filed the amendment as authorized by said order, therein alleging in effect that the negligent driver was either Watson Bost or Stewart and that in either event Charles Franklin Bost was responsible for the negligent acts of the driver.

Judgment was entered in favor of Watson Bost, dismissing plaintiff's action as to him and providing that he recover his costs from plaintiff.

Defendant Charles Franklin Bost tendered judgment in his favor, based upon the verdict, which the court refused. Thereupon, the court signed judgment on the verdict in plaintiff's

favor providing for the recovery by plaintiff from defendant Charles Franklin Bost of $20,000.00 and costs.

Defendant Charles Franklin Bost excepted and appealed, assigning errors based on exceptions duly taken.

*Webster S. Medlin for plaintiff, appellee.*
*Hartsell & Hartsell for defendant Charles Franklin Bost, appellant.*

BOBBITT, J. As stated on oral argument, appellant seeks a reversal, not a new trial. His assignments of error relate (1) to the overruling of his motions for judgment of involuntary nonsuit, (2) to the refusal of the court to sign judgment on the verdict in his favor, (3) to the allowance after verdict of plaintiff's motion for leave to amend his complaint, and (4) to the entry of judgment on the verdict in plaintiff's favor.

There was plenary evidence to support a finding that Litaker's death was caused by the negligence of *the driver* of the Chrysler and that Charles Franklin Bost, the owner, seated therein, had control and direction of its operation. Indeed, although the jury found otherwise, plaintiff's evidence was sufficient to support a finding that, as originally alleged by plaintiff, Watson Bost was driving the Chrysler at the time of the wreck. For this reason, *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14, 139 A.L.R. 1147, discussed below, has no bearing on the question of nonsuit.

Appellant's position as to nonsuit rests on his contention that the undisputed evidence, taken in the light most favorable to plaintiff, established the contributory negligence of Litaker so clearly that no other reasonable inference or conclusion could be drawn therefrom. *Dennis v. Albemarle,* 243 N.C. 221, 90 S.E. 2d 532.

Only the testimony of Stewart, plaintiff's witness, and that of defendant Watson Bost, relate to what happened prior to 5:00 p.m., at Chubirko's Restaurant, the occasion when Charles Franklin Bost and his Chrysler are first referred to in the evidence. Their testimony tends to show that they and Litaker were together from about 1:00 p.m. until they parked at Chubirko's place about 5:00 p.m.; that each had a car; that they rode around from place to place, first in one car and then in another; and that, during this period, they drank six cans of beer and at least one pint of whiskey.

There is no evidence that, during this period, any car was operated in a negligent or unusual manner or that Litaker was put on notice of the driver's incompetency, except the testimony referred to in the next paragraph.

Watson Bost testified that he met Stewart and Litaker at Buddy's Grill about 1:00 p.m.; that they left on Highway 29A, he driving his car, and Stewart, with Litaker beside him, driving Litaker's car; that Stewart drove up beside him and challenged him to a "drag race"; and that they raced for some distance on Highway 29A but did not get "over sixty an hour." On the other hand, Stewart testified positively that he and Litaker did not meet Watson Bost at Buddy's Grill about 1:00 p.m. and that there was no incident relating to a "drag race" on Highway 29A. Hence, as to such incident, the testimony was in direct conflict. On motion for nonsuit, the conflict must be resolved in favor of plaintiff. *Cozart v. Hudson*, 239 N.C. 279, 78 S.E. 2d 881.

There was no evidence that Litaker drove any car prior or subsequent to 5:00 p.m.

Conceding the evidence sufficient to support a finding that plaintiff's intestate was contributorily negligent in continuing to ride with Stewart and Watson Bost throughout the afternoon and up to 5:00 p.m., it is insufficient to establish contributory negligence in this respect as a matter of law.

There is evidence tending to show that Litaker, Stewart, Watson Bost and Charles Franklin Bost left Chubirko's place in the Chrysler on two occasions, first at 5:00 p.m. or shortly thereafter and again about 7:00 p.m.; that, on the first occasion, with Watson Bost driving, they went to Buddy's Grill where they drank "the rest of the whiskey which we had with us," and thereafter drove to a Mrs. Helton's where Stewart, Litaker and Watson Bost went in and bought another pint of whiskey; and that thereafter they returned to Chubirko's place and parked.

There is evidence tending to show that, after returning to Chubirko's place, Stewart and Litaker got in Stewart's Ford coupe; and that Stewart twice drove up and down the divided highway and after doing so drove back into Chubirko's place and parked his car. Concerning such incident, Watson Bost testified: "Don (Stewart) got out of his car and came around to Bill's side and as Bill started to get out, he caught his foot on the runningboard and he almost fell."

According to Watson Bost, the Chrysler's final departure from Chubirko's place was under these circumstances. One Paul Moose came along in a pickup truck. He was challenged by Stewart to race the Chrysler. They were to race south on Highway 29, then turn off onto Highway 73 and go west. Stewart insisted on driving and did drive the Chrysler. The Moose truck started down the highway. The Chrysler passed it before it had reached the turn-off into Highway 73. The Chrysler proceeded west on Highway 73. Moose abandoned the race and continued south on Highway 29; but another car, a Pontiac, otherwise unidentified,

traveling west on Highway 73, passed the Chrysler. The wreck of the Chrysler occurred shortly thereafter, that is, after the Chrysler had overtaken and passed the Pontiac. The testimony of Moose and Swaringen (who testified he was riding with Moose), witnesses for defendants, was to the effect that Stewart instigated the race and was driving the Chrysler when it left Chubirko's place. Also, their testimony further corroborates the testimony of Watson Bost as to what occurred until the Chrysler turned off into Highway 73.

Stewart testified that he had no recollection as to arranging for a race with Moose; that he did not drive the Chrysler when it left Chubirko's place; that Watson Bost was then driving the Chrysler; that he did not know who was driving the Chrysler after it entered Highway 73; that he could "only come to spots, what I remember and what I don't remember"; and that on Highway 73 "about the top of the hill at Miss Munday's house Watson was driving." Plaintiff's witness James testified that Watson Bost was driving the Chrysler on an occasion about 7:00 p.m. when he saw "a truck leave at about the same time the Chrysler left."

True, none of the evidence indicates that Litaker made any protest as to riding with Stewart or Watson Bost or as to the manner in which the Chrysler was operated. Conceding the evidence sufficient to support a jury finding that Litaker was aware of what was happening and hence was contributorily negligent in riding in the Chrysler when driven by Stewart or Watson Bost on the last and fatal trip, we cannot say that the undisputed evidence establishes this so clearly that no other reasonable inference or conclusion can be drawn therefrom. In this connection, attention is called to the testimony set out below.

Mrs. Brown, plaintiff's witness, testified that she knew Litaker; that she was in a car, parked at Chubirko's place, around 4:30 or 5:00 p.m., when a Ford car in which Litaker was riding drove up and parked; that the driver of this Ford car went over to a Chrysler car; that two men came from the Chrysler, "woke Billy Ray up," and helped him to the Chrysler where he (Litaker) "got on the back seat and laid down." As to Billy Ray's condition before he was aroused and helped to the Chrysler, she testified: "I just don't know whether Billy Ray was asleep or not but he was passed out." Again: ". . . they took him by the arm and woke him up and when he got up he had on khaki pants. I don't know whether he had been drinking or not but they were wet."

James, plaintiff's witness, testified that he was at Chubirko's place around 7:00 p.m. when the Chrysler, with the four said occupants, drove up and parked. He testified: "All of the boys

got out of the car but Billy Litaker. He was in the Chrysler and was in the right front seat, lying down. He did not move."

The testimony of Mrs. Brown and James was offered by plaintiff in relation to the contributory negligence issue. Since the burden of proof on this issue was on defendants, appellant's contention that plaintiff had made no allegation corresponding to this evidence is without merit.

Whether Litaker was contributorily negligent in riding in the Chrysler when driven by either Stewart or Watson Bost would depend in last analysis on whether he knew what was going on and so consciously committed himself to the assumption of the risk.

The charge of the trial court was not included in the record on appeal. Hence, it is presumed that the jury was instructed correctly on this and every principle of law applicable to the facts. *Hatcher v. Clayton,* 242 N.C. 450, 88 S.E. 2d 104.

The court was correct in overruling defendants' motion for judgment of involuntary nonsuit and in submitting the contributory negligence issue for determination by the jury.

*Bogen v. Bogen,* 220 N.C. 648, 18 S.E. 2d 162, cited by appellant, is readily distinguishable. There the testimony of *plaintiff,* the guest passenger, was to the effect that she knew the defendant driver habitually drove in a reckless manner and at a high rate of speed without keeping a proper lookout.

We come now to the interpretation of the verdict, the amendment of the complaint after verdict and the judgment entered in plaintiff's favor.

Here certain fundamentals must be kept in mind. "It is well settled that a verdict should be liberally and favorably construed with a view of sustaining it, if possible, and in ascertaining its meaning resort may be had to the pleadings, the evidence and the charge of the court." *Guy v. Gould,* 202 N.C. 727, 164 S.E. 120. Too, admissions of the parties, if any, may be considered. *Jernigan v. Jernigan,* 226 N.C. 204, 37 S.E. 2d 493. Moreover, the presumption is in favor of the correctness of the judgment of the lower court; and the burden is upon appellant to show error amounting to a denial of some substantial right. Strong, N.C. Index, Vol. 1, Appeal and Error Sec. 39, where many cases are cited.

Our task of interpreting the verdict is rendered more difficult on account of appellant's failure to include the charge in the record on appeal. However, we must presume that the charge instructed the jury correctly as to all phases of the case and that the jury followed his instructions. *Bank v. Wysong & Miles Co.,* 177 N.C. 284, 289, 98 S.E. 769.

Appellant's first position is that the verdict, properly interpreted, entitled him to a judgment that plaintiff recover nothing and dismissing the action. On this point, our inquiry is to determine what facts were established by the verdict, leaving for later consideration questions concerning the amendment to the complaint.

The jury, in answering the first issue, found that the death of Litaker was not caused by the negligence of defendant Watson Bost. The gist of appellant's contention is that this finding necessarily established that Litaker's death was not caused by the negligence of defendant Charles Franklin Bost; and that the jury's answer to the second issue should be disregarded. The asserted basis for this contention is that the jury should have been instructed that, if they answered the first issue, "No," they would not consider the second issue; or that, as a legal result of their said answer to the first issue, they would likewise answer the second issue, "No." Obviously, the trial judge did not so instruct the jury. It is equally apparent that the trial judge did not consider that the jury failed to follow his instructions or that the answers to the first and second issues were inconsistent.

There was no evidence or contention that Charles Franklin Bost, personally, was driving the Chrysler. Since all the evidence tended to show that either Watson Bost or Stewart was the driver, we think the only reasonable interpretation of the verdict is that the jury found that Stewart was the driver. Hence, the answer to the second issue, a finding that plaintiff's intestate was killed by the negligence of Charles Franklin Bost, must be considered as establishing appellant's legal liability for the negligence of the actual driver, to wit, Stewart.

When defendants' evidence was developed, so the record indicates, it appeared probable that Stewart rather than Watson Bost was in fact the driver of the Chrysler. The trial judge, alert to see that the cause was determined on the real issues, did not submit a single issue, *e.g.:* "Was plaintiff's intestate killed by the negligence of defendants as alleged in the complaint?" Instead, he submitted the first and second issues as set out above. It seems apparent that this was done in order that he might instruct the jury that, if they answered the first issue, "No," they would proceed to the second issue; and that, upon reaching the second issue under such circumstances, if they found that Stewart was the negligent driver and appellant was responsible for his acts, they would answer the second issue, "Yes." It is significant that the record does not show that appellant objected to the issues as submitted by the court.

This brings us to the amendment to the complaint, "to conform to the facts proved." Unquestionably, to the extent plaintiff had

alleged that Watson Bost was the driver, the complaint was at variance with the facts established by the verdict. In this respect the amendment was appropriate to conform to the facts so established.

G.S. 1-163, in pertinent part, provides: "The judge or court may, before and after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading . . . by inserting other allegations material to the case; or when the amendment does not change substantially the claim or defense, by conforming the pleading . . . to the fact proved."

G.S. 1-165 provides: "The court or judge shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings which do not affect the substantial rights of the adverse party; and no judgment may be reversed or affected by reason of such error or defect."

G.S. 1-168 provides: "1. No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action upon the merits. Whenever it is alleged that a party has been so misled, that fact and in what respect he has been misled must be proved to the satisfaction of the court; and thereupon the judge may order the pleading to be amended upon such terms as shall be just. 2. Where the variance is not material as herein provided, the judge may direct the fact to be found according to the evidence, or may order an immediate amendment without costs."

While the record shows that the motion for leave to amend the complaint was not made until after verdict, it seems clear that the trial was conducted *as if* the amendment had been made. If misled to his prejudice, it would seem that appellant should have objected then on the ground of variance. The record shows no objection by appellant to the conduct of the trial on the theory indicated and no exception to the charge. The impression prevails that in the trial below the real fight was on the contributory negligence issue.

Under the factual situation disclosed by the record, we are constrained to hold that the amendment did not change substantially the plaintiff's claim, that is, the essential nature of his cause of action against appellant, and that the variance prior to amendment did not mislead appellant to his prejudice in the trial on the merits.

In his answer, appellant admitted that Charles Franklin Bost was an occupant of *his* Chrysler on the occasion of the fatal wreck.

Defendants' evidence, although identifying Stewart rather than Watson Bost as the driver of the Chrysler, tended more

strongly than that offered by plaintiff to establish Charles Franklin Bost's responsibility for its operation. Watson Bost testified that "Charles Franklin Bost was present when this arrangement (the race with Moose) was made"; and that, after the Pontiac had passed the Chrysler, and when the Chrysler was in process of overtaking the Pontiac, Charles Franklin Bost said to Stewart, "If you are going to pass him, pass him."

True, to recover from defendant Watson Bost, plaintiff was required to establish his allegation that Watson Bost was in fact the driver. But *the crucial fact, in respect of appellant's liability, was not the identity of the driver but rather that appellant permitted or directed the negligent operation of the Chrysler.* The fact that the jury accepted defendants' evidence as to the identity of the actual driver under circumstances where defendants' evidence tended to establish both the negligence of the actual driver and the legal responsibility of Charles Franklin Bost therefor would seem an unsubstantial basis upon which to deny plaintiff's right to recover.

This distinction should be noticed. The liability of an owner-occupant does not depend upon whether the driver was his agent in the ordinary sense, that is, then engaged as authorized in furtherance of the owner's business. Rather, the liability of such owner-occupant arises from the fact that he knowingly permits or directs the negligent operation of his car by another. *Evans v. Johnson,* 225 N.C. 238, 34 S.E. 2d 73; *Harper v. Harper,* 225 N.C. 260, 34 S.E. 2d 185; *Bass v. Ingold,* 232 N.C. 295, 60 S.E. 2d 114; *Harris v. Draper,* 233 N.C. 221, 63 S.E. 2d 209; *Dosher v. Hunt,* 243 N.C. 247, 90 S.E. 2d 374. Also, see *Matheny v. Motor Lines,* 233 N.C. 681, 65 S.E. 2d 368.

In *Harper v. Harper, supra,* opinion by Barnhill, J. (later C. J.), it is stated: "The owner of an automobile has the right to control and direct its operation. So then when the owner is the occupant of an automobile being operated by another with his permission or at his request, nothing else appearing, the negligence of the driver is imputable to the owner. (Citations omitted.)" The following excerpt from the same opinion is noted: "Strictly speaking, the person operating with the permission or at the request of the owner-occupant is not an agent or employee of the owner, but the relationship is such that the law of agency is applied." See Annotation, "Owner's presence in motor vehicle operated by another as affecting owner's rights or liability," 50 A.L.R. 2d 1281.

To establish the liability of *an absentee owner,* it must be shown that the driver was the owner's agent and then acting in furtherance of the owner's business. Ordinarily, in such case, the

identity of the driver would be a vital factor in the determination of the alleged agency.

The vital distinction is that the liability of *an absentee owner* depends on the application of the doctrine of *respondeat superior* while the liability of *an owner-occupant,* where the driver is not his agent, depends upon his own acts or omissions as related to his right to control and direct the operation of his car.

In *Whichard v. Lipe, supra,* defendant Lipe was the absentee owner of the truck. Plaintiff had alleged that the individual defendant, Lipe's agent, was the driver at the time of the fatal wreck. No evidence supported this allegation but *the plaintiff* offered evidence tending to show that two men, both agents of Lipe, were aboard the truck and took turns in operating it. The defendant offered no evidence. The court instructed the jury that if both men aboard the truck were his agents, Lipe would be liable under the doctrine of *respondeat superior* if the jury found either of them operated the truck in such manner as to cause the death of plaintiff's intestate. The plaintiff did not ask for leave to amend his allegations to conform to the proof at the trial, after the trial or in this Court. This Court held that there was a fatal variance between plaintiff's allegations and the evidence and that, *absent an amendment,* Lipe's motion for nonsuit should have been allowed.

It is noted that the fact that the trial judge allowed the amendment to the complaint "to conform to the facts proved" tends to confirm the view that the trial was conducted and the jury instructed as indicated above.

While the crucial issue, that of contributory negligence, might well have been decided in favor of appellant, this was resolved by the jury in plaintiff's favor. As to the variance between plaintiff's original pleading and the facts established by the verdict, appellant has failed to show prejudicial error.

No error.