A. W. WIDENHOUSE, JR., v.
W. C. YOW, JR., AND HOWARD DEAN HELMS.
AND
A. W. WIDENHOUSE, SR., TRADING AS WIDENHOUSE MOTORS v.
W. C. YOW, JR., AND HOWARD DEAN HELMS.

(Filed 1 February 1963.)

**1. Appeal and Error § 51—**

In determining the sufficiency of the evidence to sustain the lower court's denial of nonsuit, incompetent evidence admitted by the trial court, as well as competent evidence, must be considered.

**2. Same—**

When a defendant offers evidence, the only motion for judgment of nonsuit to be considered on appeal is that made at the close of all the evidence.

**3. Automobiles § 42e—**

Evidence tending to show that plaintiffs' automobile collided with the rear of the automobile owned by one defendant after defendant's vehicle had entered the highway from a private driveway from plaintiffs' left and turned left, angling across the highway, blocking both lanes, and that it did so when plaintiff's vehicle was only some 200 feet away and traveling some sixty miles per hour in a sixty mile per hour speed zone, *is held* insufficient to show contributory negligence as a matter of law.

**4. Appeal and Error § 51—**

Where it is held on appeal that defendants' motions for judgment of nonsuit were properly overruled, but a new trial is awarded for error in the course of the trial, the Supreme Court will refrain fom discussing the evidence except to the extent necessary to show the reasons for the conclusions reached.

**5. Trial § 42—**

A verdict will be interpreted with reference to the pleadings, the evidence, and the judge's charge.

**6. Automobiles § 52—**

Where the uncontradicted evidence is to the effect that the owner of an automobile was riding therein, such owner cannot be entitled to nonsuit in an action to recover for the negligent operation of the car for failure of plaintiffs' evidence to show that the owner was the actual driver.

**7. Automobiles § 46; Negligence § 28—**

Where one party relies upon several acts or omissions of another as constituting actionable negligence, it is prejudicial error for the court to charge the jury conjunctively that if it found such other party was guilty of negligence in all the respects relied upon it should answer the issue in the affirmative, since negligence in any one of the respects warrants an affirmative answer if such negligence is a proximate cause of the injury.

**8. Appeal and Error § 45—**

Where error relating to one issue affects the answer to other issues, a new trial as to all issues must be awarded.

**9. Automobiles § 46; Negligence § 28—**

Where defendant introduces evidence at the trial that the driver of plaintiffs' car was driving at excessive speed and contends that such excessive speed made it impossible for the driver to avoid collision after he saw or should have seen the defendant's vehicle on the highway in front of him, an instruction on the issue of contributory negligence predicated upon the negligence of the driver of plaintiffs' car in failing to keep a proper lookout, with only incidental reference to speed, must be held for prejudicial error in failing to explain the law arising on the evidence as required by G.S. 1-180.

**10. Appeal and Error § 42—**

An erroneous instrument may not be held harmless under the rule of contextual construction when it is apparent from the record that the jury was confused and did not understand the court's charge.

APPEAL by defendants from *Olive, J.,* March, 1962, Civil Term of Cabarrus.

These two civil actions grow out of a collision that occurred Saturday, May 14, 1960, about 8:05 p.m., in Union County, North Carolina, on U.S. Highway No. 601, between a 1960 Chrysler Crown Imperial automobile owned by A. W. Widenhouse, Sr., trading as Widenhouse Motors, and a 1959 Tudor Ford automobile owned by defendant Yow.

It was stipulated that A. W. Widenhouse, Jr., at the time of the collision, was operating "the Chrysler automobile . . . as the agent of A. W. Widenhouse, Sr., t/a Widenhouse Motors."

In each action the plaintiff alleged: The Ford car was being operated by defendant Helms as agent of and "in the immediate presence of and under the direction and supervision of" defendant Yow. Helms drove the Ford from a private driveway directly into the path of the Imperial. The collision was proximately caused by the negligence of Helms, "whose negligence is imputed to the defendant W. C. Yow, Jr," in that Helms: (1) entered the public highway from a private drive and failed to yield the right of way to the car approaching on the public highway; (2) failed to maintain a proper lookout for cars upon the public highway; and (3) failed to exercise due care for his own safety and the safety of others traveling upon the public highway.

Widenhouse, Jr., on account of personal injuries, medical and hospital expenses and loss of time from his employment, prayed that he recover damages in the amount of $10,000.00.

Widenhouse, Sr., on account of the alleged difference in value of his Imperial before and after the collision, prayed that he recover damages in the amount of $4,250.00.

In each action each defendant answered separately. Each admitted defendant Yow was the owner of the Ford but in all other respects denied the essential allegations of the complaints. Each pleaded contributory negligence and asserted a counterclaim. Each defendant alleged the Ford, while proceeding on the highway, was struck from the rear by the Imperial with such force the Ford was crushed and caught on fire.

Each defendant alleged the collision was proximately caused by the negligence of Widenhouse, Jr., whose negligence is imputed to Widenhouse, Sr., in that: (a) Widenhouse, Jr., operated the Imperial at unlawful and excessive speed in violation of designated statutory provisions; (b) he overtook and ran into the rear of the Ford when both cars were proceeding in the same direction: (c) he failed to keep a proper lookout, failed to keep the Imperial under proper control and failed to exercise due care to avoid colliding with the Ford.

In each action defendant Yow in his counterclaim prayed that he recover, for the damage to his Ford, the sum of $2,300.00; and in each action Helms in his counterclaim prayed that he recover, for painful, serious and permanent injuries, the sum of $260,000.00.

The pleadings of defendant Yow differ from the pleadings of defendant Helms in this significant respect: In the pleadings of defendant Yow there is no admission or assertion as to the identity of the operator of his Ford. Defendant Helms, in his pleadings, asserts positively that the Ford was owned *and operated* by defendant Yow and that he (Helms) was riding as a passenger on the back seat.

In each action plaintiff filed a reply in which he denied the said allegations on which each defendant based his plea of contributory negligence and his counterclaim. In said replies plaintiffs did not refer to the allegation of defendant Helms, in conflict with plaintiffs' allegations, that defendant Yow *was operating* his Ford.

By consent the two actions were consolidated for the purpose of trial. Evidence was offered by plaintiff and *by defendants*. The evidence offered *by defendants* includes the testimony of each defendant. Nothing identifies any portion *of defendants' evidence* as having been offered by a particular defendant.

Ucontradicted evidence tended to show: The Imperial was proceeding north on U.S. Highway No. 601, a two-lane paved highway. The Ford entered the highway from a private drive which extended west from the highway to the home of defendant Helms. The weather

was clear. The pavement was dry. The highway was straight. Approximately one thousand feet south of the private drive there was a dip in the highway which hid from view an approaching vehicle. When the collision occurred, no other vehicles were approaching or involved.

Plaintiffs' evidence tended to show: When Widenhouse, Jr., first saw the Ford, it was on the private drive fifteen feet west of the pavement of the highway, proceeding east at a speed of 10-12 miles per hour, and the Imperial was then some 350 feet south of the private drive. When the Imperial was approximately 200 feet south of the private drive, the Ford, continuing east at approximately the same speed, reached the west edge of the pavement. Instead of yielding the right of way in favor of the approaching Imperial, the Ford then proceeded onto the highway, angling north towards the east traffic lane and blocking portions of both traffic lanes. When the collision occurred, the left rear of the Ford had not crossed the center line but was in the west traffic lane. The right center of the Imperial struck the left rear of the Ford as Widenhouse, Jr., attempted to pass to the left of the Ford.

The evidence of all defendants tended to show: The operator stopped the Ford upon reaching and before entering the highway. The occupants of the Ford looked but could see no car approaching from the south. The Ford was then driven onto the highway and was wholly within the east traffic lane, proceeding straight north, when it was overtaken and struck from the rear by the Imperial. Each of the three occupants of the Ford testified he did not see the Imperial at any time prior to the collision.

As indicated, the collision occurred north of the private drive. Estimates as to the distance from the private drive to the point of collision varied from 25-30 feet to 80-100 feet.

When the collision occurred, each driver lost control of the car he had been operating. Widenhouse, Jr., was thrown out of the Imperial. Thereafter, the Imperial came to rest, after striking various obstacles, on the west side of the highway some 240 feet from the point of the collision. The Ford came to rest to the east of the highway, "crossways of the ditch," some 100 feet from the point of collision. When the Ford came to rest, it was on fire. Helms, unconscious, was seriously burned before he was removed from the Ford.

Evidence offered by plaintiffs, in accordance with their allegations, tended to show Helms was operating the Ford.

Defendants' witnesses who testified as to the identity of the operator of the Ford were the three occupants of the Ford, namely, defendant Yow and his brother, Dock Robert Yow, and Helms. Defendant Yow and his brother, Dock Robert Yow, testified Helms was

the operator. Thereafter, Helms testified defendant Yow was the operator.

Each defendant, at the conclusion of all the evidence, moved for judgment of nonsuit and excepted to the court's denial thereof.

The nine issues submitted, and the jury's answers to issues 1-6, inclusive, are as follows:

"1. Were the plaintiffs injured and damaged by the negligence of the defendant Howard Dean Helms, as alleged in the Complaint? ANSWER: No.

"2. Were the plaintiffs injured and damaged by the negligence of the defendant W. C. Yow, Jr.? ANSWER: Yes.

"3. Did the plaintiffs, by their own negligence, contribute to their injuries, as alleged in the Answer? ANSWER: No.

"4. What amount, if any, is the plaintiff A. W. Widenhouse, Sr. entitled to recover? ANSWER: None.

"5. What amount, if any, is the plaintiff A. W. Widenhouse, Jr. entitled to recover? ANSWER: $500.00.

"6. Was the defendant Howard Dean Helms injured by the negligence of the plaintiffs, as alleged in his cross action? ANSWER: No.

"7. What amount, if any, is the defendant Howard Dean Helms entitled to recover? ANSWER: ............

"8. Was the defendant W. C. Yow, Jr. damaged by the negligence of the plaintiff, as alleged in his cross action? ANSWER: ............

"9. What amount, if any, is the defendant entitled to recover for the damage to his automobile? ANSWER: ........"

Each defendant objected and excepted to the submission of issues Nos. 1, 2, 3, 4 and 5.

The record shows: "IT WAS STIPULATED AND AGREED by the defendant W. C. Yow, Jr. that if the jury answered the first issue 'Yes' that the said Helms was operating the said automobile at the time with the permission of the occupant owner W. C. Yow, Jr. as his agent."

Defendant Yow, based on the answer, "No," to the first issue, tendered judgment that plaintiffs have and recover nothing from him and that they be taxed with the costs. The court refused to sign such judgment and defendant Yow excepted.

After verdict and before judgment the court, allowing plaintiff's motions therefor, entered an order in each action permitting the plain-

tiff "to amend his complaint so as to make it conformable to the evidence and the fact proved" and permitting a proposed amended complaint to be filed in the place and stead of the original complaint.

In each amended complaint, the plaintiff alleged:

> "4. That on said date and at said time, the defendant W. C. Yow, Jr. was the owner of a 1959 Tudor Ford automobile, which automobile was being operated *by the defendant W. C. Yow, Jr., or by his agent, the defendant Howard Dean Helms, in the immediate presence of the defendant W. C. Yow, Jr.*" (Our italics)

In the Widenhouse, Sr., action, it was adjudged (1) that the plaintiff have and recover nothing of defendant Yow except the costs of the action, and (2) that defendant Helms have and recover nothing of plaintiff on his counterclaim. In the Widenhouse, Jr., action, it was adjudged (1) that plaintiff have and recover of defendant Yow the sum of $500.00 and costs, and (2) that defendant Helms have and recover nothing on his counterclaim. (Note: Neither judgment refers to the plaintiff's action against Helms or to the counterclaim of defendant Yow.)

Each defendant excepted, appealed and assigns errors.

*Hartsell, Hartsell & Mills and E. T. Bost, Jr., for plaintiff appellees.*
*Williams, Willeford & Boger for defendant appellant Yow.*
*Smith & Griffin for defendant appellant Helms.*

BOBBITT, J.  Each defendant assigns as error the denial of his motions for judgment of nonsuit.

There was ample evidence to support a finding that, as alleged by plaintiffs, (1) the negligent operation of the Ford *by Helms* proximately caused the collision and (2) defendant Yow as owner-occupant of the Ford was liable for damages caused by the actionable negligence of Helms. Helms contends the evidence offered *by plaintiffs* and admitted over his objections tending to show Helms was the operator of the Ford was incompetent and should have been excluded. However, admitted evidence, whether competent or incompetent, must be considered on a defendant's motion for judgment of nonsuit. *Kientz v. Carlton,* 245 N.C. 236, 246, 96 S.E. 2d 14, and cases cited; *Frazier v. Gas Co.,* 248 N.C. 559, 103 S.E. 2d 721. Be that as it may, the competent and positive testimony of defendant Yow and his brother, Dock Robert Yow, identified Helms as the operator of the Ford. When a defendant offers evidence, the only motion for judgment of nonsuit to be considered is that made at the close of all the evidence. G.S. 1-183; *Murray v. Wyatt,* 245 N.C. 123, 128, 95 S.E. 2d 541.

With reference to the contention of each defendant that plaintiffs were contributorily negligent as a matter of law, it is our opinion, and we so hold, that the evidence, when taken in the light most favorable to plaintiffs, does not establish plaintiffs' contributory negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. *Dennis v. Albemarle,* 243 N.C. 221, 223, 90 S.E. 2d 532.

Defendants' motions for judgment of nonsuit were properly overruled. Since a new trial is awarded, we refrain from discussing the evidence presently before us except to the extent necessary to show the reasons for the conclusions reached. *Mason v. Gillikin,* 256 N.C. 527, 530, 124 S.E. 2d 537, and cases cited.

In the interpretation of the verdict, these legal principles must be kept in mind. It is well settled that a verdict must be interpreted with reference to the pleadings, the evidence and the judge's charge. *Guy v. Gould,* 202 N.C. 727, 164 S.E. 120; *Jernigan v. Jernigan,* 226 N.C. 204, 37 S.E. 2d 493; *Reid v. Holden,* 242 N.C. 408, 413, 88 S.E. 2d 125; *Litaker v. Bost,* 247 N.C. 298, 306, 101 S.E. 2d 31; *Gunter v. Winders,* 253 N.C. 782, 785, 117 S.E. 2d 787.

With reference to the first issue, the court instructed the jury the burden of proof was on plaintiffs to establish by the greater weight of the evidence that the negligent operation of the Ford *by Helms* proximately caused the collision and plaintiffs' damages; and if they found from the evidence and by its greater weight that the negligent operation of the Ford proximately caused the collision but failed to find from the evidence and by its greater weight that Helms was the operator thereof, the jury should answer the first issue "No."

The court instructed the jury they would consider the second issue only if they answered the first issue "No." If they answered the first issue "No," the judge instructed the jury they should answer the second issue "Yes" if the plaintiffs had satisfied them from the evidence and by its greater weight that the negligent operation of the Ford *by the driver thereof* (without identifying any particular person as the driver) proximately caused the collision and plaintiffs' damages.

When the jury, by answering the second issue "Yes," found that the negligent operation of the Ford *by the driver thereof* proximately caused the collision and plaintiffs' damages, it seems clear the jury answered the first issue "No" solely because it failed to find that Helms was the operator of the Ford.

The court submitted the case to the jury *as if* the complaints had been amended prior to or during trial to set forth the allegations of the (subsequently filed) amended complaints. When defendant Yow

was advised the case would be so submitted does not appear. Certainly he had notice thereof from the time the court settled the issues. There is no merit in the contention of defendant Yow that he was entitled to judgment that plaintiffs recover nothing from him on account of plaintiff's failure to establish that Helms (rather than defendant Yow) was the operator of the Ford.

Defendant Yow assigns as error the orders permitting plaintiffs to file said amended complaints after verdict and before judgment. He contends that, unlike the factual situation considered in *Litaker v. Bost, supra,* the amendments changed the theory of plaintiffs' actions. Originally, he contends, plaintiffs alleged Helms was the operator of the Ford and he, defendant Yow, was liable as owner-occupant for Helms' negligence; but under the after-verdict amendments plaintiffs' actions are to recover on the ground he, defendant Yow, was the actual operator of the Ford. It is noted: Whether defendant Yow or defendant Helms was operating the Ford is a matter of importance (1) in respect of their rights and liabilities *inter se* and (2) in respect of what counterclaim(s), if any, are barred by the negligence (contributory negligence), if any, of the driver of the Ford. However, for reasons noted below, we need not determine whether the after-verdict amendments substantially changed the claims of plaintiffs within the meaning of G.S. 1-163 or whether defendant Yow was otherwise prejudiced in respect of the after-verdict amendments.

Defendant Helms excepted to and assigned as error the following portion of the court's charge:

> "Now, the Court charges you as a matter of law, if you come to this sixth issue, if you are satisfied from the evidence and by its greater weight that the plaintiff Widenhouse, Jr., was operating his automobile at more than 60 miles an hour on this highway, that he did not keep a proper lookout, that the Ford automobile was out on the highway, not just approaching him but out in the highway before he ever saw it, or if he did see it, before he ever attempted to slow down or pass, that the whole left side of the highway was there open for him to pass on, and that he was negligent and that such negligence was a proximate cause of injury to the defendant Helms, it would be your duty to answer the sixth issue YES; if you are not so satisfied, you would answer it NO."

The quoted instruction was erroneous and prejudicial to defendant Helms in that its effect was to require the jury to find plaintiffs guilty of all the acts of negligence detailed by the court in order to answer the sixth issue in favor of defendant Helms. *Andrews v. Sprott,* 249

N.C. 729, 107 S.E. 2d 560; *Krider v. Martello*, 252 N.C. 474, 113 S.E. 2d 924. The instruction placed upon defendant Helms the burden of establishing (1) that Widenhouse, Jr., was operating his automobile at a speed in excess of sixty miles per hour, (2) that he did not keep a proper lookout, (3) that the Ford was out on the highway before he saw it or, if he had seen it, before he attempted to slow down or pass, and (4) that the whole left side of the highway was open for him to pass on. Paraphrasing the language of *Higgins, J.,* in *Andrews v. Sprott, supra*: Defendant Helms was entitled to have the jury pass on the question whether the evidence showed the plaintiffs, *in any* of the particulars alleged, had breached a legal duty which they owed to defendant Helms, and if so, whether such breach proximately caused his injury and damage.

It is noted: The first issue, which was answered in favor of Helms, is in effect a contributory negligence issue in respect of Helms' counterclaim(s) against plaintiffs. Hence, a new trial as to all issues between plaintiffs and Helms is awarded.

With reference to the third (contributory negligence) issue, the court, after reviewing contentions, instructed the jury as follows:

> "Now, the Court instructs you as a matter of law on the third issue, if you come to it, if you are satisfied from the evidence and by its greater weight that the plaintiff Widenhouse, Jr., was operating his automobile on the highway without keeping a lookout as to whether an automobile was coming on the highway or not, or that, seeing the automobile, that he came on when he could have slowed down and stopped after he saw that the automobile was out in the highway and kept coming at such speed and put on his brakes in such a manner that he was injured and the automobile in which he was riding was damaged, that that was negligence and that such negligence was one of the proximate causes of the injury to himself and damage to the automobile, it would be your duty to answer the third issue YES. If you are not so satisfied, you would answer it NO."

Each defendant excepted to and assigns as error (1) the quoted excerpt and (2) "(t)he failure of the Court to comply with the requirements of G.S. 1-180 in that it failed to explain and apply the law relating to speed for the jury's consideration on the issue of contributory negligence."

The maximum speed limit on U.S. Highway No. 601 was 60 miles per hour. On direct examination Widenhouse, Jr., testified he was traveling "about 60 miles an hour." On cross-examination he testified

he so advised the investigating patrolman; and in response to the patrolman's inquiry, "Weren't you going any faster?" stated he "couldn't possibly have been going over 70 miles an hour at the most." The patrolman testified he observed skid marks (black marks on the pavement) extending 210 feet south "from the point of impact." The patrolman also testified Widenhouse, Jr., had stated to him "that he could have been traveling from 60 to 70 miles an hour, that he had been traveling that fast previously down the road prior to that time, but he couldn't say what speed he was running when the collision occurred." The foregoing testimony, when considered with evidence as to the force of the impact, the damage to the cars and their course of travel after the collision, was sufficient to support a finding that Widenhouse, Jr., was operating the Imperial at an unlawful and excessive speed.

Under the court's instruction, the third issue was to be considered by the jury only in the event the jury, by answering the first or second issue "Yes," had found the driver of the Ford guilty of actionable negligence in entering upon the highway from the private drive. Widenhouse, Jr., testified he was 200 feet south of the private drive when the Ford entered the highway. Evidence offered by defendants tended to show the Imperial was not in sight when the Ford entered the highway. Defendants relied largely on their allegations and the evidence as to the speed of the Imperial as a basis for their contention that Widenhouse, Jr., was guilty of contributory negligence. Hence, whether the Imperial was traveling at an unlawful and excessive speed and, if so, whether Widenhouse, Jr., after he saw or should have seen the Ford enter the highway from the private drive, was unable *on account of such unlawful and excessive speed* to avoid striking the Ford, were material questions in the determination of the third issue. We are of opinion, and so decide, that the quoted instruction, although containing an incidental reference to speed, did not sufficiently "declare and explain the law arising on the evidence given in the case" as required by G.S. 1-180. For prejudicial error in this respect, defendants are entitled to a new trial.

It is noted: Although the law and facts pertinent to the third and sixth issues were substantially the same, there was, as indicated above, a variance between the instructions given with reference thereto.

Plaintiffs contend the charge when considered contextually is free from prejudicial error and that the designated portions of the court's instructions, if erroneous, did not mislead or confuse the jury. Whether caused by erroneous instructions or otherwise, it seems the jury was uncertain and confused.

It is noted that the jury, after finding the Imperial was damaged by the negligence of defendant Yow, answered the fourth issue "None." The uncontradicted evidence was that this 1960 Imperial, biggest of the Imperials and having 350 h.p., was practically new, had been in use only three or four months and had been driven about three thousand miles; that its reasonable market value before the collision was $5,200.00 or more and its reasonable market value after the collision was $1,000.00; and that it was not repaired but sold as junk. Indeed, a photograph offered in evidence by defendants shows the Imperial was greatly and extensively damaged.

It is noted further that, when *the jury first returned* and presented the issues to the court, the court stated he could not accept the verdict. The record does not show the jury's answers. After further instructions, the jury again deliberated and returned the verdict now appearing in the record. Suffice to say, the incident tends to show the jury was confused and had not understood the court's instructions.

For the reasons stated, the verdict and judgments are vacated and defendants are awarded a new trial.

New trial.